Patsy T. MINK et al., Appellants,

v.

**ENVIRONMENTAL PROTECTION AGENCY, William D. Ruckelshaus, Administrator, Environmental Protection Agency, et al.**

No. 71-1708.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 16, 1971.

Decided Oct. 15, 1971.

As Amended Nov. 2, 1971.

Certiorari Granted March 6, 1972.
See 92 S.Ct. 1196.

Wilkey, Circuit Judge, did not participate in consideration of case.

Mr. Ramsey Clark, Washington, D. C., with whom Mr. Kenneth C. Bass, III, was on the motion, for appellants.

Mr. Jeffrey Axelrad, Atty., Department of Justice, with whom Messrs. Morton, Hollander and Harland F. Leathers, Attys., Department of Justice, were on the opposition to the motion, for appellees.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and WILKEY,* Circuit Judges.

PER CURIAM:

This is a suit brought by 33 members of Congress, in both their official and private capacities, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1970), to obtain several documents pertaining to an underground nuclear test explosion which had been scheduled to take place on Amchitka Island, Alaska.[1]

Priority is given by the Act to such suits in the District Court, see 5 U.S.C. § 552(a) (3) (1970). In accordance with this Congressional policy, we provide comparable expedition in the appellate court.

## I

Appellees, who were defendants in the District Court, admit the existence of the documents in question, which are concerned with the environmental, national defense, and foreign relations consequences of the planned test. The documents were prepared in report form by

---

* Circuit Judge Wilkey did not participate in the consideration of this case.

1. The test was originally scheduled for October, 1971. Congress has provided that it may not take place unless the President gives his direct approval. Pub. L. No. 92–134, 85 Stat. 365 (1971). *Cf.* Committee For Nuclear Responsibility, Inc. v. Seaborg, 149 U.S.App.D.C. ——, 463 F.2d 783 (1971).

a special committee chaired by Honorable John Irwin, Undersecretary of State. The Committee was established by the President on January 20, 1969, and is part of the National Security Council system. The President, on June 27, 1969, directed the Committee to review the annual underground nuclear test program. Pursuant to this direction the Committee prepared a report on the Alaskan nuclear test (code-named Cannikin).

As a result of an apparent leakage of certain portions of the report that suggested some agency disapproval of the test, Representative Patsy Mink asked the White House for copies of the report. The request was denied and this suit followed, with 32 other Members of Congress joining Representative Mink as plaintiffs. They sought summary judgment to compel disclosure of the requested documents. Appellees, defendants, filed a motion to dismiss or in the alternative for summary judgment and a supporting affidavit executed by Undersecretary Irwin. A hearing was held on August 27, 1971, before the District Court. The District Court thereafter entered an order which dismissed the complaint insofar as plaintiffs sought to maintain their action in their capacity as Members of Congress, on the ground that they failed to state a justiciable case by virtue of the Separation of Powers doctrine. Insofar as plaintiffs proceeded in their private capacity, the District Court refused to compel disclosure on the grounds that the documents fell within two of the nine exemptions contained in the FOIA, 5 U.S.C. § 552(b) (1) (national defense and foreign affairs secrets) and 5 U.S. C. § 552(b) (5) (inter-agency memoranda). Plaintiffs, appellants, noted an appeal, and now move in this court for summary reversal.

## II

Congress tailored the Freedom of Information Act to require federal agencies to make information available to any person, unless that information must be withheld for a purpose that Congress deemed paramount to disclosure. Those matters requiring secrecy have been defined in nine exemptions to free disclosure. The two exemptions at issue in this case permit withholding of matters if they are: "(1) specifically required by Executive order to be kept secret in the interest of national defense or foreign policy . . . (5) inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency." [2]

The Freedom of Information Act post-dates a 1953 Executive Order—No. 10501—that provides for classification of matters relating to national defense.[3] The legislative history of the Act does not define clearly the relationship between this Executive Order and the exemption of national defense and foreign affairs secrets of 5 U.S.C. § 552(b) (1). Since the passage of the Act, the Executive Order has continued to be the authority for classification of matters relating to national defense. Appellants argue that the national defense and foreign affairs secrets exemption requires each and every document that an agency wishes to withhold to be classified by separate Executive Order and not by the present classification procedure. After examining the various interpretations given this exemption,[4] we conclude that summary disposition of this issue by this court is inappropriate, and should be the subject of a full consideration on the merits by this court if the appeal is continued following the disposition on remand.

2. 5 U.S.C. § 552(b) (1), (5).

3. 3 C.F.R. 292 (1970).

4. *Compare* Epstein v. Resor, 421 F.2d 930, 933 (9th Cir. 1970), cert. denied, 398 U.S. 965, 90 S.Ct. 2176, 26 L.Ed.2d 549

(1970), Sen.Rep. 813, 89th Cong., 1st Sess. (1965) at 8, *with* H.R.Rep. 1497, 89th Cong., 1st Sess. (1966) at 9–10, Dept. of Justice, Attorney General's Memorandum on the Public Information Section of the A.P.A. (1967) at 30.

We do conclude, however, that summary disposition is appropriate in part, for the purpose of remand, on two of the matters before us.

■ 1. The critical paper before us is the affidavit of Undersecretary Irwin, and particularly its paragraph 5.[5] We note first his statement that the documents in question include a memorandum from the Council on Environmental Quality to Undersecretary Irwin which is attached to the classified report, but "is separately unclassified." Appellees' justification for this bunching of all appendages according to the highest classification of the document to which they are attached is based on the following paragraph of section three of Executive Order 10501: [6]

(b) *Physically Connected Documents.* The classification of a file or group of physically connected documents shall be at least as high as that of the most highly classified document therein. Documents separated from the file or group shall be handled in accordance with their individual defense classification.

This court sees no basis for withholding on security grounds a document that, although separately unclassified, is regarded secret merely because it has been incorporated into a secret file. To the extent that our position in this respect is inconsistent with the above-quoted paragraph of Section 3 of Executive Order 10501, we deem it required by the terms and purpose of the FOIA, enacted subsequently to the Executive Order.

5. 5. "In accordance with the foregoing directions from the President, the Under Secretaries Committee has prepared a report upon the proposed underground nuclear test known as Cannikin consisting of the following:

A. A memorandum prepared by me to the President dated July 17, 1971. This memorandum is classified as Top Secret and as Restricted Data.

B. Attached to that memorandum to the President was a report of the Under Secretaries Committee on the proposed Cannikin test. This report is classified Top Secret and as Restricted Data. The following documents were attached to this report:

1. A letter from the Chairman of the Atomic Energy Commission to the Chairman of the Under Secretaries Committee, myself. This letter is separately classified Secret and separately as Restricted Data.

2. A report of the Defense Program Review Committee, the Chairman of which is Dr. Henry Kissinger. This report is separately classified as Top Secret and separately as Restricted Data.

3. The Environmental Statement Cannikin, dated June, 1971, by the United States Atomic Energy Commission. This document is publicly available and a copy is attached as Exhibit C.

4. A transcript of a briefing by the Atomic Energy Commission on Cannikin given orally to the Under Secretaries Committee. This document is separately classified as Secret and separately as Restricted Data; and

5. A memorandum to me from the Council on Environmental Quality. This memorandum is an attachment to the classified report and is separately unclassified.

C. In addition, letters containing recommendations were transmitted to me regarding the proposed test known as Cannikin by Mr. William D. Ruckelshaus for the Environmental Protection Agency, by Mr. Russell Train, for the Council on Environmental Quality and by Dr. Edward E. David, Jr., for the Office of Science and Technology. Each of these three letters is classified Top Secret and as Restricted Data.

The documents described in this paragraph, except for item B3 above, were prepared solely for the purpose of giving advice to the President and involve, except for item B5 above, highly sensitive matter that is vital to our national defense and foreign policy. They were prepared and used solely for transmittal to the President as advice and recommendations and set forth the views and opinions of the individuals and agencies preparing the documents so that the President might be fully apprised of varying viewpoints and have been used for no other purpose."

6. 3 C.F.R. 295 (1970).

The papers before us contain an assertion, based on an account in the New York Times, that the only reason for the Secret classification of the recommendation transmitted to Undersecretary Irwin by William D. Ruckelshaus, Administrator of the Environmental Protection Agency, is an instruction put on the basis that the entire file would be classified Secret. We take note that Undersecretary Irwin's affidavit identifies certain items (B 1, 2 and 4) as "separately classified," but no such statement is made as to the letter from the Administrator of E.P.A., or from Russell Train, Chairman of the Council on Environmental Quality, or from Dr. Edward E. David, Jr., for the Office of Science and Technology. This is not a case where the mere disclosure of the fact of the inquiry is itself secret.

However, we do not think that a matter as important as this is to be determined on the basis of Undersecretary Irwin's affidavit as it stands. Under our remand, the District Court will take evidence on whether, and to what extent, the file contains documents that are now within the umbrella of a secret file but which would not have been independently classified as secret. Such documents are not entitled to the secrecy exemption of subdivision (b) (1) solely by virtue of their association with separately classified documents.

■ The following provision of Executive Order 10501 requires our attention since it is likely to be involved on remand:

(c) *Multiple Classification.* A document, product, or substance shall bear a classification at least as high as that of its highest classified component. The document, product, or substance shall bear only one over-all classification, notwithstanding that pages, paragraphs, sections, or components thereof bear different classifications.

The same reasoning applies to this provision as to the one dealing with physi-cally-connected documents. Secrecy by association is not favored. If the non-secret components are separable from the secret remainder and may be read separately without distortion of meaning, they too should be disclosed.

■ 2. Similar treatment must be accorded on remand with respect to the Government's claim for exemption under subdivision (b) (5). The Court has recently considered that exemption in Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971), and there is no need to review that opinion at length. It suffices to say that while the exemption protects the decisional processes of the President, or other policymaking executive officials, it does not prevent the disclosure of factual information unless-it is inextricably intertwined with policymaking processes.[7]

### III

■ We turn to the procedure to be followed by the District Court in carrying out the terms of our remand. In approaching this problem we have in mind the very special place the President occupies in the conduct of foreign affairs, both traditionally and constitu- tionally, apart from his additional responsibilities in connection with the national defense. In the exemption from disclosure contained in Section 552(b) (1) Congress has recognized the need for protection of the channels of communication and advice to the President in both these respects which are involved in the present litigation. Accordingly, *in camera* consideration of the documents by the District Court, looking toward their possible separation for purposes of disclosure or nondisclosure, is necessary, else the possibility of nondisclosure under the guides we have stated would be defeated. Moreover, although we have held in Soucie v. David, *supra,* that the policy of the Act requires that the exemptions from disclosure prescribed by FOIA be construed narrowly, this admonition must be tempered some-

---

7. Soucie v. David, at 155, 448 F.2d at 1078.

what when the documents contain data supplied to the President with respect to nuclear explosions involving not only the national defense but the conduct of foreign affairs by the President in the context of such nuclear testing. In considering the documents also under the exemption granted by Section 552(b) (5) the District Court *in camera* will likewise have in mind, in possibly separating out factual data that can be disclosed without impinging on the policymaking decisional processes intended to be protected by this exemption, the sometimes delicate character of the responsibility of the President in the conduct of foreign affairs.

As already noted, this opinion does not deal with all the questions argued to us. It suffices that for the reasons noted the summary judgment denying all relief to plaintiffs must be reversed, and the case remanded forthwith for further consideration by the District Court.

So ordered.