**CITIES SERVICE COMPANY, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION, Defendant.**

**GULF OIL CORPORATION, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION, Defendant.**

Civ. A. Nos. 83–812, 83–888.

United States District Court, District of Columbia.

July 19, 1984.

Paul A. Lenzini, Chapman, Duff and Paul, Washington, D.C., John W. Castles 3d, David H. Marks, James R. Eiszner, Jr., Lord, Day & Lord, New York City, for plaintiffs.

Robert E. Eaton, Jr., Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

**JUNE L. GREEN, District Judge.**

Before the Court are two related Freedom of Information Act ("FOIA") cases. Plaintiffs Cities Service Company ("Cities Service") in Civil Action No. 83–812, and Gulf Oil Corporation ("Gulf") in Civil Action No. 83–888, seek exactly the same documents withheld by defendant Federal Trade Commission ("FTC" or "Commission"). Plaintiffs filed joint memoranda in the related actions and FTC also filed joint memoranda. Accordingly, the Court shall address these actions jointly.

Presently, these actions are before the Court on defendant's motion for summary judgment, plaintiffs' opposition thereto, defendant's supplemental memorandum in support of its motion for summary judgment, defendant's affidavit and index of documents, plaintiffs' statement of objections to defendant's affidavit and index of documents, defendant's response to plaintiffs' objections to defendant's affidavit and index of documents, and the entire record herein. The Court has conducted an *in camera* review of the documents at issue.

For the reasons outlined below, the Court grants defendant's motion for summary judgment.

### Statement of Facts

Plaintiffs Gulf and Cities Service seek access to twenty-nine documents relating to a proposed acquisition of Cities Service by Gulf. A brief review of the facts which led to the actual creation of these documents is essential in order for the Court to fully explain the basis for its decision.

On June 17, 1982, plaintiffs filed pre-merger notification reports with the Commission and the Department of Justice. Upon receiving this notification, the Commission began an investigation of the proposed merger between Gulf and Cities Service to determine whether such a merger would violate section 7 of the Clayton Act, 15 U.S.C. § 18, or section 5 of the FTC Act, 15 U.S.C. § 45, and to determine whether it should file suit to enjoin the proposed merger. The investigation and subsequent litigation continued until August 17, 1982, when Gulf formally withdrew its pre-merger notification filing with the Commission.

Between the time Gulf and Cities Service filed their pre-merger notification reports and the time Gulf withdrew its tender offer, various commissioners, members of their staffs, the Director of the Bureau of Competition, and Commission attorneys and economists assigned to the matter met with representatives of Gulf and Cities Service to evaluate the need for the Commission to take legal action and to discuss the possibility of settlement.

On July 28, 1982, the Commission met to consider its attorneys' and economists' recommendations concerning the possibility of pursuing legal action to enjoin plaintiffs from conducting the merger. It was at this meeting that the Commission directed its attorneys to seek a temporary restraining order and a preliminary injunction to enjoin Gulf from consummating the proposed acquisition of Cities Service stock. An action was filed the following day in the United States District Court for the District of Columbia and the Honorable Charles A. Richey granted the Commission's request for a temporary restraining order. *See FTC v. Gulf Oil Corp.*, No. 82–2131 (D.D.C. July 29, 1982) (order granting temporary restraining order).

On August 6, 1982, Gulf publicly announced that it was withdrawing its tender offer for Cities Service stock. Finally, on August 17, 1982, Gulf formally withdrew the pre-merger notification filing and the injunction action was dismissed when the merger plans were terminated.

Shortly after the termination of the Commission's preliminary injunction action against Gulf and Cities Service, both plaintiffs filed with the Commission a request under the FOIA for access to all documents in the Commission's possession which involved the proposed acquisition of Cities Service by Gulf.

When the Commission received these requests, it immediately began its search of documents responsive to these requests. After reviewing the documents, the Office of the Secretary ("Secretary") granted in part and denied in part the parties' requests. This decision of the Secretary was appealed to the Commission's General Counsel.

On February 4, 1983, after review of all responsive documents, the General Counsel responded to the parties' appeal of the Secretary's partial denial of their requests. The General Counsel granted the parties access to over 3,200 pages of documents responsive to their requests. The General Counsel denied access to the remaining documents based on FOIA Exemptions 3, 4, and 5. 5 U.S.C. § 552(b)(3), (4), (5). It was from this final agency decision that plaintiffs have filed their suits.

The parties, since the time of suit, have narrowed the number of documents at issue to twenty-nine. Plaintiffs have further indicated that the only documents or portions of documents the withholding of which they wish to contest, are those withheld by the Commission under Exemption 5 of FOIA ("Exemption 5"). 5 U.S.C. § 552(b)(5). The Commission has released all portions of the documents which it believes are not subject to the FOIA exemptions.

The documents at issue, except for Document No. 20 and parts of Document No. 2, relate to meetings or telephone conversations with representatives of Gulf and/or Cities Service and the Commission staff. The remaining two documents relate to meetings among members of the Commission staff. All the documents were created between the time plaintiffs filed their pre-merger notification reports and the time Gulf withdrew its tender offer.

The Commission has filed a motion for summary judgment, as well as an affidavit and index of documents withheld. In addition, the Commission has submitted to the Court for *in camera* review "unexpurgated copies" of the twenty-nine documents at issue. The Court has reviewed these documents carefully, as well as all of the material that has been submitted in this action. Defendant's motion for summary judgment has been opposed jointly by plaintiffs.

### Conclusions of Law

In order for the Court to grant a motion for summary judgment, there can be no genuine issue of material fact. *See* Fed.R.Civ.P. 56(e). For the Government to be entitled to a grant of summary judgment in a FOIA action, it must demonstrate that "no substantial and material facts are in dispute and that [it] is entitled to judgment as a matter of law." *Founding Church of Scientology v. National Security Agency,* 610 F.2d 824, 836 (D.C. Cir.1979) (quoting *National Cable Television Association v. FCC,* 479 F.2d 183, 186 (D.C.Cir.1973)). To prevail in a FOIA action "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *National Cable Television Association v. FCC,* 479 F.2d at 186. If the agency withholds disclosure of certain requested documents it "must show by detailed and specific justification" the basis for the withholding. *Mead Data Central, Inc. v. U.S. Department of Air Force,* 566 F.2d 242, 259 (D.C.Cir.1977). It is plain that " 'conclusory generalized allegations of exceptions' are unacceptable...." *Founding Church of Scientology v. National Security Agency,* 610 F.2d at 830 (quoting *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)). The Government must indicate by *"detailed* affidavit that the documents are *clearly* exempt from disclosure." *Id.* (emphasis in original) (quoting S.Rep. No. 1200 (93d Cong., 2d Sess. 9 (1974) U.S.Code Cong. & Admin. News 1974, pp. 6285, 6287).

Plaintiffs argue that summary judgment is not appropriate in this case at this time because the Commission has failed to meet its burden by adequately explaining in its

affidavit and index its justification for withholding the documents requested. After reviewing the affidavit and index, the Court finds that plaintiffs' argument is without merit. The affidavit and index are substantailly detailed. They provide the Court a clear, thorough, and specific description of the characteristics of each document, as well as a detailed reason why the Commission believes that each document, or withheld portion of each document, should be exempt. *E.g., Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 861 (D.C.Cir.1980); *Mead Data Central, Inc. v. U.S. Department of Air Force*, 566 F.2d at 261; *Vaughn v. Rosen*, 484 F.2d at 827.

The Court notes that the index provided by the Commission, standing alone, would have provided it with enough material to determine whether the claim of exemptions were justified or not. In order to be certain, however, that the Commission has provided plaintiffs and the Court with the proper justification for withholding the documents through the affidavits and index, and further to address any objection plaintiffs have concerning the thoroughness or completeness of the index or affidavit, the Court also conducted an *in camera* review of these documents.[1] This review confirmed the conclusion that these affidavits did, in fact, comply with the requirements outlined in *Coastal States, Mead Data Central,* and *Vaughn.*

Each of the documents which defendant has withheld is claimed to be exempt from disclosure under Exemption 5 of the FOIA. 5 U.S.C. § 552(b)(5). Pursuant to Exemption 5, an agency may withhold "intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* "From the language of this exemption, it is clear that Congress has attempted to incorporate into the FOIA certain principles of civil discovery law." *Jordan v. Department of Justice*, 591 F.2d 753, 772 (D.C.Cir.1978) (en banc). The exemption is designed "to exempt [from disclosure] those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975), *quoted in, Jordan v. Department of Justice*, 591 F.2d at 772; *see also FTC v. Grolier, Inc.*, 462 U.S. 19, 103 S.Ct. 2209, 2213–15, 76 L.Ed.2d 387 (1983).

Defendant asserts that all twenty-nine of the documents withheld constitute attorney work product under Exemption 5. In addition, defendant asserts that twenty-two documents, or portions thereof, are claimed to be protected by the deliberative-process privilege of Exemption 5. The Court finds that these documents are protected under the asserted privileges.

### I. Attorney Work-Product Privilege

█ In addressing defendant's attorney work-product claim of privilege, the Court must determine whether the documents withheld are "routinely" or "normally" available to a party in litigation.[2] *FTC v. Grolier, Inc.*, 103 S.Ct. at 2213–15. The Court notes that all of the documents at issue here were prepared by various staff attorneys and officials at the Commission after Gulf and Cities Service had filed their pre-merger notification reports. Once those reports were filed, an investigation

---

1. Plaintiffs have argued vigorously that defendant's motion for summary judgment was filed prematurely because the Court had indicated that it would review the documents at issue, *in camera,* with defendant's affidavit and index, before considering summary judgment motions. Through an apparent misunderstanding, defendant filed its motion for summary judgment simultaneously with its filing of the affidavit and index. In order to resolve any difficulties plaintiffs may have and before considering defendant's summary judgment motion, the Court requested defendant to submit the documents for *in camera* inspection. Those documents were provided to the Court on June 20, 1984.

2. In In Re: Gulf Oil Corporation/Cities Service Company Tender Offer Litigation, Misc. No. 84–2, F.S. 82–482 (D.D.C. May 31, 1984), the Honorable Stanley S. Harris of the United States District Court for the District of Columbia entered an order denying plaintiffs' motion to compel the Commission, pursuant to discovery requests, to produce the same documents that are the subject of this action.

was initiated by the Commission to determine whether such a merger was lawful under the relevant antitrust laws. The notes at issue were mostly those which related to meetings or telephone conversations with representatives of Gulf and/or Cities Service. Two documents are notes of private meetings among members of the Commission staff. All the documents at issue were prepared in preparation for litigation or settlement.

## A.

■ Under the work-product privilege of Exemption 5, only those documents prepared by an attorney or his agent in anticipation of a particular litigation or on the basis of some articulable claim which is likely to lead to litigation may be withheld. *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d at 864–66; *Jordan v. Department of Justice*, 591 F.2d at 774; *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 623 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976).

Plaintiffs have argued that because some of the documents at issue do not relate to preparation for litigation but merely involve discussions of settlement, they may not be exempt from disclosure under the work-product privilege of Exemption 5.

■ This argument is without merit. Certainly, any attorney's notes or working papers which relate to litigation decisions or to possible settlement discussions pertaining to foreseeable litigation are protected under the attorney work-product privilege. *See Coastal States Gas Corp. v. Department of Energy*, 617 F.2d at 865 (so long as "litigation was fairly foreseeable at time memorandum was prepared" exception applies); *Kent Corp. v. N.L.R.B.*, 530 F.2d at 623 (materials qualify as work product if prospect of litigation identifiable when materials are prepared); *Herbert v. Lando*, 73 F.R.D. 387, 402 (S.D.N.Y.1977), *rev'd on other grounds*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) (communications may contain work product even if they are prepared in an effort to avoid possible litigation). In his concurring opinion in *Grolier*, Justice Brennan noted that:

> It would be of substantial benefit to an opposing party (and of corresponding detriment to an agency) if the party could obtain work product generated by the agency.... He would get the benefit of the agency's legal and factual research and reasoning, enabling him to litigate "on wits borrowed from the adversary." ... Worse yet, he could gain insight into the agency's general strategic and tactical approach to deciding when suits are brought, how they are conducted, and on what terms they may be settled.... Any litigants who face litigation of a commonly recurring type ... have an acute interest in keeping private the manner in which they conduct and settle recurring legal disputes.

*FTC v. Grolier, Inc.*, 103 S.Ct. at 2216 (Brennan, J., concurring) (citations omitted).

The documents in this case were all prepared " 'with an eye towards litigation' even though they were prepared by a desire to avoid ... a possible suit." *Herbert v. Lando*, 73 F.R.D. at 402 (quoting *Vilastor-Kent Theatre Corp. v. Brandt*, 19 F.R.D. 522 (S.D.N.Y.1956)). From the time plaintiffs filed their pre-merger notification through the time Gulf withdrew that notice, the Commission was poised for the possibility of litigation. The mere fact that some of the notes of discussions relate to possible settlement does not affect the work-product privilege.

Plaintiffs have also argued that many of the notes at issue in this matter actually were not prepared by individuals who were involved with or had responsibility in the Gulf-Cities Service injunction action or settlement. Because they were not so involved, plaintiffs argue, those materials cannot be considered the attorney work product of the injunction action. This claim is factually without support. Each document at issue was prepared in anticipation of litigation. Most of the documents are notes or working papers of either Thomas J. Campbell, Director of the Com-

mission's Bureau of Competition, or Edward M. Shumsky, Mr. Campbell's personal assistant and advisor.[3] As Bureau Director, Mr. Campbell "is the official ultimately 'responsible for enforcing Federal antitrust and trade regulation laws, [and] for investigating alleged law violations, and recommending to the Commission such further action as may be appropriate ... includ[ing] [necessary legal action]." Declaration of David C. Shonka and Index to Documents, ¶ 18 ("FTC Affidavit") (quoting 16 C.F.R. § 0.16). Mr. Campbell was also actively involved in the Gulf-Cities Service injunction action. *See* Defendant's Response to Plaintiffs' Statement of Objections to Federal Trade Commission's Supplemental Index at Exhibits J, K. As Mr. Campbell's assistant, Mr. Shumsky's papers would also be subject to the same level of protection as those of Mr. Campbell. The papers produced by both individuals were written either in preparation for litigation or while settlement negotiations were ongoing.

Many of the remaining disputed documents were produced by attorneys who worked directly on the preliminary injunction.[4] These individuals were actively involved with the Gulf-Cities Service injunction action and, therefore, the documents at issue were prepared in anticipation of litigation.

The three remaining documents at issue are the notes and working papers of three of the commissioners' attorney-advisors.[5] These notes were all created within twenty-four hours of the time the commissioners met and voted in favor of filing an action to enjoin Gulf and Cities Service from consummating their proposed merger. In defendant's declaration and index, Mr. David C. Shonka states that:

> these attorney advisors were responsible for making recommendations to the commissioners regarding litigation decisions and in fact the commissioners and their

attorney advisors commonly work closely with the litigation staff in defining the issues to be raised in court litigation to which the Commission is a party.

FTC Affidavit ¶ 24. It is plain to the Court that these remaining documents, as well as all of the documents at issue in this case, were created by those integrally involved in the Gulf-Cities Service injunction action.

## B.

■ Plaintiffs' main argument is that the Commission has withheld wrongfully material that is purely factual. As plaintiffs note correctly, the work-product principle under Exemption 5 does not include material that is factual in nature. *E.g., Mead Data Central, Inc. v. U.S. Department of Air Force,* 566 F.2d at 256. Any portion of factual material that is reasonably segregable from the documents must be disclosed and cannot be considered exempt under the privilege. *E.g., EPA v. Mink,* 410 U.S. 73, 92, 93 S.Ct. 827, 838, 35 L.Ed.2d 119 (1973). Plaintiffs claim that the Commission has interpreted the work-product doctrine too broadly and that the portion of material which the Commission claims to be "impressions" are actually factual summaries and, therefore, are subject to disclosure under the FOIA. They assert that the documents withheld by the Commission merely record meetings and conversations between representatives of the Commission, Gulf and/or Cities Service and, therefore, must be considered largely factual in nature. *See Robbins Tire & Rubber Co. v. NLRB,* 563 F.2d 724, 735–37 (5th Cir.1977), *rev'd on other grounds,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) (witness statements not protected from disclosure).

In response, defendant notes that the materials at issue here are not verbatim transcripts of what was said at various meetings nor are they intended to be a

---

**3.** Those documents include Document Nos. 5, 10, 12, 16–19, 21–23, and 25–29.

**4.** These documents include Document Nos. 1, 2, 3, 4, 6, 7, 8, 9, 11, 20, and 24.

**5.** These documents include Document Nos. 13, 14, and 15.

complete factual record. The documents at issue, the Commission claims, merely comprise each author's own impression of what he believed to be relevant and important issues; they demonstrate a weighing of certain facts and identify what each author considers to be of special relevance and importance to the Commission in its investigation, litigation strategy, or settlement plans.

In support of this claim that the documents here constitute attorney work product, defendant notes that the United States Court of Appeals for the District of Columbia ("D.C. Circuit") held in *Bristol-Meyers v. FTC*, 598 F.2d 18, 29 (D.C.Cir.1978), that contemporary notes taken by an attorney during an interview of witnesses conducted by opposing counsel are protected from disclosure by the work-product doctrine. In so holding, the court noted that although "it cannot be said that the *interviews* themselves reveal legal theories ... the *notes* ... would reveal counsel's 'mental impressions' and evaluations of the testimony given." *Id.* (Emphasis in original). Defendant argues that just as the notes of interviews were protected under the attorney work-product privilege in *Bristol-Meyers*, so also must the notes of meetings and conversations be protected in the present case.

The Commission claims correctly that although its meetings with representatives of the oil companies and an actual record of what transpired would not be considered work product, the weighing and sifting of relevant facts as highlighted in each author's notes surely do constitute work product. To provide an opponent the opportunity to examine notes taken by an attorney during negotiation or settlement discussions would unnecessarily impinge upon the "zone of privacy" which an attorney has "within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d at 864. *Accord Hickman v. Taylor*, 329 U.S. 495, 511–513, 67 S.Ct. 385, 393–394, 91 L.Ed. 451 (1947).

If one examines the notes of various authors that attended the same meeting, the argument that these notes are work product has merit. Document Nos. 5, 6, and 7, for example, are the working papers of Mr. Shumsky, Mr. James M. Giffin, attorney in the Bureau of Competition, and Mr. David C. Shonka, attorney in the General Counsel's Office at the Commission, respectively. These papers all relate to a meeting which took place on July 23, 1982, among themselves and the oil company representatives. Although these individuals attended the same meeting, the material that is highlighted in each of these notes is entirely different. The differences in these notes actually reflect each author's own impression of what facts were relevant to the Commission's investigation and litigation strategy. The notes demonstrate a weighing and analysis of matters which might affect directly the Commission's litigation strategy in the future.

In *Mervin v. FTC*, 591 F.2d 821, 826 (D.C.Cir.1978), the D.C. Circuit noted that "[a]n important part of what is protected by the privilege for attorney work-product is the attorney's consideration and weighing of facts.... Because of this, even factual material segregated from attorney work-product is likely to reveal some of the attorney's tactical and strategic thoughts." The court concluded that "material which might disclose an attorney's appraisal of factual evidence is attorney work-product excepted from disclosure by exemption 5." *Id.* (citing *Kent Corp. v. N.L.R.B.*, 530 F.2d at 624; *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1137–38 (4th Cir.1977)); *see also Mobil Oil Corp. v. FTC*, 430 F.Supp. 849, 859 (S.D.N.Y.1977) (attorney work-product privilege protects factual matter contained in interviewer's reports; selection of salient facts reflect attorney's work); *United States v. J.B. Williams Co.*, 402 F.Supp. 796, 801 (S.D.N.Y.1975) (attorney work-product privilege protects personal recollection notes of what transpired at FTC compliance proceeding; attorney will always sift relevant from irrelevant facts).

Upon examination of the documents in this case, the Court concludes that these materials do constitute the actual work product of attorneys at the Commission. Although the documents in large part consist of factual materials, they also reflect the attorney's own mental impression of what he believes to be significant to the Commission in its litigation/settlement strategy. Because these documents must be considered those that would not be "routinely" or "normally" available to an opponent in a litigation setting, *FTC v. Grolier, Inc.*, 103 S.Ct. at 2213–15, the Court cannot and will not interfere with that work product. Therefore, the Court finds that the Commission was correct in withholding the twenty-nine documents pursuant to Exemption 5.

## II. Deliberative-Process Privilege

■ In addition to claiming that all twenty-nine documents are exempt under the attorney work-product privilege of Exemption 5, defendant claims that twenty-two of the documents also are exempt under the predecisional deliberative-process privilege of Exemption 5 of the FOIA.[6] The purpose of the deliberative-process privilege is to prevent injury to the quality of agency decision making by fostering "frank discussion of legal or policy matters." *NLRB v. Sears Roebuck & Co.*, 421 U.S. at 150, 95 S.Ct. at 1516 (quoting from S.Rep. No. 813, p. 9). For a discussion of the policy rationale behind the Exemption 5 protection of the deliberation process, *see Jordan v. Department of Justice*, 591 F.2d at 772.

In *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, the D.C. Circuit explained the types of documents protected by the deliberative-process privilege under Exemption 5:

> The exemption ... covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose

the view of the agency, suggesting as agency position that which is as yet only a personal position. To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency.... We also ask whether the document is recommendatory in nature or is a draft of what will become a final document, and whether the document is deliberative in nature, weighing the pros and cons of agency adoption of one viewpoint or another.

*Id.* at 866.

Defendant has stated that the documents withheld pursuant to the deliberative-process privilege are exempt from disclosure because the documents either constitute notes of meetings with oil company representatives taken by Commission staff members whose responsibilities are to provide advice to the Commissioners or the Director of the Commission's Bureau of Competition on settlement efforts and litigation strategy, or they constitute notes taken by staff attorneys responsible for the Gulf-Cities Service injunction action whose notes were taken to help the authors evaluate the need for legal action or the possibility of settlement. The Commission states that all of the documents withheld under the deliberative process highlight each author's concerns as to various issues relating to the Gulf-Cities Service injunction action. In addition, the Commission states that the notes reflect each author's reactions to comments made by individuals at the meetings and further reflect the author's insights into the kinds of arguments which might be advanced at trial. The notes are predecisional, defendant claims, because they antedate any decision that was made by the Commission. Therefore, because these documents are both predecisional and deliberative, defendant argues that they are protected under the deliberative-process privilege.

---

**6.** These documents include Document Nos. 1, 5, 6, 9, 10, 12–23, 25–29.

Plaintiffs argue that the material withheld by the Commission under the deliberative-process principle largely consists of factual material relating to meetings with oil company representatives and, therefore, may not be exempt from disclosure. They note that purely factual material which is severable from and does not compromise the predecisional deliberative-process portion of a document is not exempt from disclosure under Exemption 5. *EPA v. Mink*, 410 U.S. at 91, 93 S.Ct. at 837. Plaintiffs further argue that because the notes are not of internal agency discussions but actually of negotiations with representatives from Gulf and Cities Service, they cannot be considered deliberative-process material.

■ Plaintiffs' argument is without merit. Just as these documents were exempt under the work-product doctrine because the selection of relevant facts reflected each author's weighing and evaluation of matters considered significant, so they must also be exempt under the predecisional deliberative-process privilege. The documents here do not solely consist of factual material. They are "inextricably intertwined" with the reasoning and conclusions that form the basis of the author's recommendations and advice to the Commission. *EPA v. Mink*, 410 U.S. at 92, 93 S.Ct. at 838 (quoting *Mink v. EPA*, 464 F.2d 742, 746 (D.C.Cir.1972)); *see also Ryan v. Department of Justice*, 617 F.2d 781, 790 (D.C.Cir.1980) ("factual segments are protected from disclosure as not being purely factual if the manner of selecting and presenting those facts would reveal the deliberative process"). As the D.C. Circuit in *Mead Data Central, Inc. v. U.S. Department of Air Force*, 566 F.2d at 256, noted: "Exemption five is intended to protect the deliberative process of government and not just deliberative material.... In some circumstances, the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted by [Exemption 5]." *Id. See also Montrose Chemical Corp. v. Train*, 491 F.2d 63, 67–71 (D.C.Cir.1974) (evidence summaries prepared by staff,

used to assist agency head charged with making decision, exempt under Exemption 5). These documents, therefore, need not be disclosed.

The cases cited by plaintiffs do not affect this conclusion. For example, plaintiffs reliance on *Playboy Enterprises, Inc. v. Department of Justice*, 677 F.2d 931 (D.C.Cir. 1982), is misplaced. In that case, the Court indicated that the report at issue "was prepared only to inform the Attorney General of facts which he in turn would make available to members of Congress." *Id.* at 936. The facts in *Playboy Enterprises* were not prepared to become an integral part of the decision-making process, but were prepared merely for informational purposes. In contrast, the material in the present case was created for the purpose of helping its authors and/or the Commission make decisions. For similar reasons, the Court also finds plaintiffs' reliance on *ITT World Communications, Inc. v. FCC*, 699 F.2d 1219 (D.C.Cir.1983), *rev'd on other grounds*, 446 U.S. 463, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984), to be without merit. The Commission rightly withheld the documents at issue here because disclosure of these debatable factual materials would surely impinge upon the Commission's predecisional deliberative-process privilege.

## Conclusion

The Court finds that the twenty-nine documents and portions of documents at issue in this case were withheld properly, pursuant to the FOIA Exemption 5, 5 U.S.C. § 552(b)(5).

Accordingly, the Court grants defendant's motion for summary judgment.