TAX ANALYSTS, Plaintiff,

v.

**INTERNAL REVENUE SERVICE,**
Defendant.

No. 96–2285 (CKK).

United States District Court,
District of Columbia.

March 26, 2001.

Opinion on reconsideration
in part, May 21, 2001.

William Aaron Dobrovir, Warrenton, VA, for Tax Analysts.

Samuel Alvin Mitchell, U.S. Department of Justice, Tax Division/Ben Franklin, Washington, DC, Jason S. Zarin, Michael Joseph Salem, U.S. Department of Justice, Washington, DC, for Internal Revenue Service.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

### (Reconsideration of Earlier Opinion and Renewed Cross–Motions for Summary Judgment)

This case was brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552, as amended, by Plaintiff Tax Analysts ("Plaintiff") seeking disclosure of various documents produced by the Internal Revenue Service's Office of Chief Counsel. Pending before the Court are Renewed Cross–Motions for Summary Judgment filed by Plaintiff and Defendant Internal Revenue Service ("Defendant" or "IRS"). In addition, Plaintiff has filed a Motion for Reconsideration of this Court's Order and Opinion of March 31, 2000. For the reasons stated below, the Court denies Plaintiff's Motion for Reconsideration and grants in part and denies in part Plaintiff's and Defendant's Renewed Cross–Motions for Summary Judgment.

## I. BACKGROUND

When Plaintiff first filed this Freedom of Information Act ("FOIA") suit, it sought full disclosure of six categories of documents produced by the IRS's Office of Chief Counsel: Legal Memoranda ("LMs"), Litigation Guideline Memoranda ("LGMs"), Tax Litigation Bulletins ("TLBs"), Technical Assistances ("TAs"), Field Service Advice Monthly Reports ("FSA Reports"), and Pending Issue Reports ("PIRs"). This case has since been narrowed by the parties via stipulations and/or concessions as to certain issues. Congress further narrowed the case by enacting the Internal Revenue Service Reform and Restructuring Act of 1998 ("IRS-RRA"), Pub.L. 105–206, 112 Stat. 685, 772 (codified as I.R.C. § 6110 (West Supp. 1999)), which deprives the Court of jurisdiction over Plaintiff's claims to the extent that they pertain to TLBs, TAs "to the field," and post–1985 LGMs. As a result of these developments, when cross-motions for summary judgment were first filed before the Court, the summary judgment record was quite complex.

Nevertheless, on March 31, 2000, this Court found that some of Plaintiff's claims were amenable to summary disposition and granted summary judgment in part ("March Order"). The Court granted IRS's motion for summary judgment and denied Plaintiff's motion for summary judgment as to those categories of documents that were unaffected by Congress' enactment of IRSRRA: LMs, PIRs and FSA Reports. Both parties' motions were denied as moot with respect to TLBs, post–1985 LGMs, and TAs to the field, all three of which had been dismissed from the case in the context of the IRS's IRS-RRA motion to dismiss. This left two remaining categories of documents: pre–1986 LGMs and TAs other than TAs to the field. As for the pre–1986 LGMs, because the motions for summary judgment were filed at a time when neither party could have anticipated that the Court would be forced to narrow its ruling along these lines, the Court denied without prejudice this portion of the motions for summary judgment with the expectation that the parties would renew their motions in light of the changed landscape of this litigation. As to TAs other than TAs to the field, the portion of the motions pertaining to TAs

**4**

was granted in part, denied in part, and remanded to the IRS for an enhanced *Vaughn* index that would enable the Court to fully evaluate the claimed exemptions.

Subsequent to the Court's ruling, Defendant has conceded that as to the pre–1986 LGM's, the case is moot because these documents have already been released to Plaintiff. *See* Def. Praecipe Withdrawing Portion of Def's Renew. Summ. J. Brief. Therefore, the only remaining category of documents pending before the Court at this time is TAs other than TAs to the field. Accordingly, complying with the Court's request in the March Order, the IRS has submitted supplemental *Vaughn* indexes and both parties have now further briefed the Court on the remaining issue of TAs other than TAs to the field in their respective Renewed Cross–Motions for Summary Judgment. In addition, however, Plaintiff has also filed a Motion for Reconsideration of the Summary Judgment Order of March 31, 2000, in regard to the Court's ruling that IRS is not bound by the so-called "harm" rule.

## II. DISCUSSION

### A. Reconsideration of March Order for Summary Judgment

Plaintiff asks this Court to reconsider its ruling in its March Order that IRS's foreseeable "harm" rule, articulated in the Internal Revenue Manual ("IRM") Part 1230 § 293(2), is not binding on IRS. Before addressing the merits of Plaintiff's motion,

the Court will first consider whether it is timely. Plaintiff filed its Motion for Reconsideration almost seven months after this Court's Order on March 31, 2000. The question of whether the motion is timely is determined by whether it is governed by Federal Rule of Civil Procedure Rule 54(b) ("Rule 54(b)") or Federal Rule of Civil Procedure Rule 59(e) ("Rule 59(e)").

Defendant argues that Plaintiff's motion is untimely because it is subject to the ten—day limitation of Rule 59(e). *See* Defendant's Opposition to Plaintiff's Motion for Reconsideration ("Def. Opp. to Recons.") at 2–3. Under Rule 59(e), a party seeking reconsideration of a final or appealable judgment has ten days from the judgment in which to file and serve the opposing party with the motion to reconsider. *See* Fed. R. Civ. Pro. 59(e).[1] Plaintiff argues that its motion is timely because it falls within Rule 54(b). *See* Plaintiff Reply to Defendant's Opposition to Plaintiff's Motion for Reconsideration ("Pl. Reply for Recons.") at 1. Under Rule 54(b), a court may reconsider any order not certified for appeal when the order in question did not resolve all the claims of all parties in the action. *See* Fed.R.Civ.P. 54(b).[2] However, this Court cannot agree with Plaintiff that its Motion for Reconsideration is governed by Rule 54(b).

■ Motions to reconsider are governed by Rule 54(b) when such motions are filed after an interlocutory order and before the

---

1. Rule 59(e) states that "[A] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed. R. Civ. Pro. 59(e).

2. Rule 54(b) provides in relevant part that [w]hen more than one claim for relief is presented in an action... the court *may* direct the entry of a *final judgment* as to one or more but fewer than all of the claims or parties... *only* upon an *express determi-* *nation* that there is no just reason for delay and upon an *express direction* for the entry of judgment. In absence of such determination and direction, any order... which adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties... is *subject to revision at any time* before the entry of judgment adjudicating all the claims... Fed.R.Civ.P. 54(b) (emphasis added).

entry of a "final judgment." *See Pivot Point International, Inc. v. Charlene Products, Inc.*, 816 F.Supp. 1286, 1287 (N.D.Ill.1993) (citing *Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102, 103 (M.D.Pa.1989)). Motions to reconsider made after a final judgment or after a trial are governed by Rules 59(e) and 60(b).[3] *See Pivot Point International, Inc.*, 816 F.Supp. at 1287. Therefore, the timeliness of Plaintiff's Motion for Reconsideration turns on whether this Court's March Order granting partial summary judgment was a final judgment. *See id.* If the March Order was final, the motion is governed by Rule 59(e) and is thus untimely. *See id.* at 1288. In contrast, if the March Order was not a final judgment, then the motion is governed by Rule 54(b) and although filed seven months after the Order, it may be timely.[4] *See id.*

Judgment is defined for the purposes of the Federal Rules of Civil Procedure in Rule 54(a): " 'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Fed. R.Civ.P. 54(a). Accordingly, at issue is whether this Court's March Order was appealable. Defendant argues that a FOIA suit constitutes a request for injunctive relief and thus an order granting par-

tial summary judgment for the Government and denying Plaintiff's request for injunctive relief may be appealable under 28 U.S.C. § 1292(a)(1). *See* Def. Opp. to Recons. at 2 (citing *Safe Flight Instrument Corp. v. McDonnell–Douglas Corp.*, 482 F.2d 1086, 1093 (9th Cir.1973) (denial of injunctive relief constitutes an order subject to an interlocutory appeal)). Section 1292 carves out a limited category of interlocutory orders that can be subject to appellate review. In particular, the provision allows appellate review of orders by a district judge "granting, continuing, modifying, refusing or dissolving injunctions...." 28 U.S.C. § 1292(a)(1). However, not every order of a district court denying injunctive relief is reviewable through an interlocutory appeal. *See Center for National Security Studies v. Central Intelligence Agency*, 711 F.2d 409, 411 (D.C.Cir.1983). If the district judge's order has the practical effect of denying injunctive relief, an appeal is available under Section 1292(a)(1) when the order involves a decision directly addressing the merits of the case. *See id.* at 412. If the injunctive order fails to address the merits of the case, appeal will lie only if appellant can show some serious, perhaps irrepara-

---

**3.** Rule 60(b) allows for reconsideration of final judgments for up to a year where there has been some mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, etc. *See* Fed.R.Civ.P. 60(b).

**4.** It is not clear whether Plaintiff's Motion for Reconsideration would be timely even under Rule 54(b). Rule 54(b) does not have express service or filing requirements for motions to reconsider. *See Pivot Point International, Inc.*, 816 F.Supp. at 1288. One district court has interpreted the silence as having no time constraints for motions to reconsider an interlocutory order under the Rule. *See A. Hollow Metal Warehouse, Inc. v. U.S. Fidelity and Guaranty Co.*, 700 F.Supp. 410, 411–12 (N.D.Ill.1988). However, this Court agrees

with Defendant that such motions should be brought within a *reasonable* period after an interlocutory order during the pendency of the litigation. *See* Def. Opp. to Recons. at 3; *cf. Pivot Point International, Inc.*, 816 F.Supp. at 1288 (a motion for reconsideration filed within 11 days, missing proper service under Rule 59(e) by less than one hour and fifteen minutes, was brought within reasonable time under Rule 54(b)) (emphasis added). Because the Court finds Plaintiff's Motion for Reconsideration untimely under Rule 59(e), it is unnecessary for the Court to consider whether the seven-month delay between the entry of the March Order and Plaintiff's filing of its Motion for Reconsideration was reasonable.

ble, harm resulting from delay caused by denial of review. *See id.*

█ The initial question is whether the March Order granting partial summary judgment for IRS was a denial of injunctive relief. In *Center for National Security Studies*, the D.C. circuit court held that a court's function in a FOIA case, determining whether to order disclosure or to permit an agency to withhold requested documents, is clearly injunctive in nature. 711 F.2d at 412. Therefore, the March Order, granting summary judgment to IRS as to all categories of requested documents except for TAs other than TAs to the field, plainly had the practical effect of denying Plaintiff an injunction requiring the disclosure of the requested documents. *See id.* Furthermore, in granting summary judgment for IRS, this Court ruled on the merits as to the various requested documents. The Court conducted the weighing process of all evidence as required under Rule 56 of the Federal Rules of Civil Procedure and determined that no material issue of fact was in dispute.

Clearly, in so doing, the Court ruled on the merits as to all documents except for TAs other than TAs to the field. *See Center for National Security Studies*, 711 F.2d at 413. It appears, therefore, that the Court's March Order is appealable under Section 1292(a)(1) since the Order was a denial of injunctive relief directly addressing the merits of the case.

However, the determination of whether an interlocutory appeal is permissible here, and ultimately, whether the Court's March Order was final, is further complicated because the March Order left pending one issue, namely whether Defendant must disclose TAs other than TAs to the field.[5] There is disagreement as to which interlocutory orders granting judgment to a party on a FOIA issue are immediately appealable.[6] However, the standard articulated by the D.C. circuit court is controlling for this Court. The D.C. circuit court has held that interlocutory appeals are allowed where the injunctive order affected "predominantly all" of the merits of the case. *Center for National Security Stud-*

---

**5.** Circuit courts have permitted interlocutory appeals of some matters under § 1292(a)(1) even where other issues remained pending in the district court. *See Miller v. Bell*, 661 F.2d 623 (7th Cir.1981) (substantially all issued decided by injunction; however remaining FOIA claim still pending); *Tokarcik v. Forest Hills School District*, 665 F.2d 443 (3d Cir. 1981) (merits of case resolved by district court; damages question still pending); *Laffey v. Northwest Airlines, Inc.*, 642 F.2d 578 (D.C.Cir.1980) (predominately all issues in a complex Title VII case resolved by district court; appeal under § 1292(a)(1) permissible); *but see Gould v. Control Laser Corp.*, 650 F.2d 617 (5th Cir.1981) (where order denying injunctive relief involved only two of three issues in complaint, no appeal on the merits permissible).

**6.** *Loomis v. United States Dep't of Energy*, 1999 WL 1012451, at *1 (2d Cir.1999) (holding that partial grant of summary judgment is not final order); *Church of Scientology Int'l v.*

*IRS*, 995 F.2d 916, 921 (9th Cir.1993) (ruling that document is "not exempt," without accompanying disclosure order, held nonappealable); *Ferguson v. FBI*, 957 F.2d 1059, 1063–64 (2d Cir.1992) (noting that while "partial disclosure orders in FOIA cases are appealable," fact that district court may have erred in deciding question of law does not vest jurisdiction in appellate court when no disclosure order has yet been entered and, consequently, no irreparable harm would result); *Irons v. FBI*, 811 F.2d 681, 683 (1st Cir.1987) (allowing government to appeal motion for partial summary judgment for plaintiff, stating that appellate jurisdiction vests at time order requiring government to disclose records is issued); *John Doe Corp v. John Doe Agency*, 850 F.2d 105, 107–08 (2d Cir.1988) (finding district court order denying motion for disclosure of documents, preparation of *Vaughn* Index, and answers to interrogatories appealable and reversing on merits), *rev'd on other grounds*, 493 U.S. 146, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989).

*ies,* 711 F.2d at 413. (citing *Laffey v. Northwest Airlines, Inc.,* 642 F.2d 578 (D.C.Cir.1980)); *I.A.M. Nat. Pension Fund Benefit Plan A v. Cooper Industries, Inc.,* 789 F.2d 21, 24, (D.C.Cir.1986). In *Center for National Security Studies,* the district court had denied injunctive relief as to only one count without addressing the merits of the remaining eleven FOIA claims, and therefore, the appellate court reasoned that the district court's order resolved only a portion of the overall case, ultimately ruling that the order was not appealable. 711 F.2d at 412. In contrast, this Court's March Order denied injunctive relief as to all categories of documents and left pending only one sub-category—TAs other than TAs to the field. The Court's March Order affected predominantly all of the merits of the case, and as such was subject to immediate appeal, and therefore, was final. Accordingly, Plaintiff's Motion for Reconsideration should have been filed within the ten-day period required under Rule 59(e). Plaintiff's Motion for Reconsideration filed seven months after the March Order is untimely and therefore, Plaintiff's Motion must be denied.

▆ In the alternative, the Court voluntarily revisits the question of whether the IRM is binding on IRS and again finds that it is not. Plaintiff's Motion for Reconsideration argues again—for the third time—that IRS bears the additional burden of demonstrating that it has complied with the so-called "harm" rule in the IRM.[7] *See* Plaintiff's Motion for Reconsideration of the Summary Judgment Order of March 31, 2000 ("Pl. Mot. for Recons.") at 1–2.

This Court's March Order rejected Plaintiff's same argument and found that the relevant language of the IRM did not sufficiently demonstrate that IRS intended to be bound by the "rule." *See* Memorandum Opinion for Summary Judgment of March 31, 2000 ("Mem. Op. for Summ. J.") at 3 n. 3. Plaintiff asks the Court to reconsider its previous ruling arguing that because the August 31, 2000, revision of the IRM ("Revised IRM") now contains three references to the "harm" rule, instead of just one as in the old IRM, the Revised IRM evinces IRS's intention to be bound by the rule. Pl. Reply for Recons. at 4. The relevant provision of the Revised IRM provides,

"[t]he Commissioner of Internal Revenue issued a *FOIA policy directive* that the agency will assert FOIA exemptions (other than those required by law) only when it is determined that disclosure would significantly impede or nullify IRS actions in carrying out a responsibility or function..."

Revised IRM 1.3.13.1(6) (emphasis added). The referenced policy directive states that IRS

"will grant a request under [FOIA]... unless: (a) the record is exempt from required disclosure under the FOIA; and (b) public knowledge of the information contained in the record would significantly impede or nullify IRS actions in carrying out a responsibility or function..."

Policy Statement P–1–192. This is the same language the Court previously held in its March Order to be insufficient to bind IRS.[8]

---

7. Plaintiff made the same argument in Plaintiff's Memorandum in Support of Summary Judgment (filed Feb. 13, 1998) at 29–36, and Plaintiff's Notice of Filing of an IRS Statement Accepting and Implementing the "Harm Rule" (filed Oct. 22, 1999).

8. The language of the previous IRM that the Court reviewed in its March Order is as follows:
 "[IRS] will grant a request under [{FOIA]... unless the record is exempt from required disclosure under the FOIA and public knowledge of the information

As a general rule, an agency pronouncement of an internal policy, like the IRM here, is transformed into a "binding regulation" only if so intended by the agency. *See Doe v. Hampton,* 566 F.2d 265, 281–82 (D.C.Cir.1977); *Chiron Corp. and PerSeptive Biosystems, Inc. v. National Trans. Safety Bd.,* 198 F.3d 935, 943–44 (D.C.Cir. 1999) (stating that the agency's intent to be bound is the determinative factor). An agency's intent, in turn, is "ascertained by an examination of the statement's language, the context, and any available extrinsic evidence." *Padula v. Webster,* 822 F.2d 97, 100 (D.C.Cir.1987) (citing *Doe,* 566 F.2d at 281). The Court previously determined in its March Order that the IRM's language and the context did not demonstrate IRS's intent to bind itself, and neither the Revised IRM's language nor the context has changed sufficiently for the Court to come to a different conclusion.[9] The language of the Revised IRM . language simply informs that a FOIA policy directive has been issued. *See* Revised IRM 1.3.13.1(6). The language of the Policy Statement itself is only a directory "will" rather than a mandatory "shall" or "must." *Cf. Doe,* 566 F.2d at 281. Again, the Court finds that the relevant language of the Revised IRM speaks not of mandatory binding "regulation," but merely of precatory internal procedures.

Plaintiff quotes two other provisions from the Revised IRM mentioning the "harm" rule and argues that the quoted language is mandatory. *See* Pl. Mot. for Recon. at 11–12. However, these provisions also seem to indicate that the IRM's "harm" rule is not binding on IRS. The first quoted provision states that the "[d]iscretionary exemption *should not be*

asserted unless: [ (a) ] there is a substantial legal basis for withholding; and [ (b) ] a foreseeable harm can result from the disclosure." Revised IRM 1.3.13.7.1(5) (emphasis added). "Should" is directory, not mandatory, language. *See Doe,* 566 F.2d at 281. Although the second quoted provision uses the mandatory word "must," it simply refers back to the directory language of the discretionary disclosure policy of the Revised IRM 1.3.13.7.1(5). *See* Revised IRM 1.3.13.7.2.5(b)(5), ¶ (6) (stating that "records *must be* examined *in light of the discretionary disclosure policy*") (emphasis added). Furthermore, in light of the other provisions, which state that "the Counsel attorney is *recommended to ascertain* the foreseeable harm," the Court cannot agree with Plaintiff that the Revised IRM evinces IRS's intention to bind itself to the "harm" rule. *See* Revised IRM 1.3.13.7.2.5(b) (5) ¶ (7) and ¶ (8) (emphasis added). Accordingly, Plaintiff's Motion for Reconsideration is denied.

### B. Renewed Cross–Motions for Summary Judgment

■ As a general rule, an agency must respond to a FOIA request for information concerning its records and make those records available to the requester, unless the records fit into one of several exceptions. *See* 5 U.S.C. § 552(a)(3) and (b). "Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Moore v. Aspin,* 916 F.Supp. 32, 33 (D.D.C.1996) (citing *Weisberg v. Department of Justice,*

---

contained in the record would significantly impede or nullify IRS actions in carrying out a responsibility or function..." IRM Part 1230 § 293(2).

9. Plaintiff gives no examples of "extrinsic evidence" that would speak to the intent of IRS. *See* Pl. Mot. for Recons. At 13.

705 F.2d 1344, 1350 (D.C.Cir.1983)). The agency bears the burden of demonstrating the validity of any exemption that it asserts. *See* 5 U.S.C. § 552(a)(4)(B); *Beck v. Department of Justice,* 997 F.2d 1489, 1491 (D.C.Cir.1993) ("[c]onsistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents").

As discussed above, on March 31, 2000, this Court granted IRS's motion for summary judgment as to most documents. However, the Court also ordered the parties to further brief the Court in regard to the one remaining category of documents—TAs other than TAs to the field. Accordingly, the parties filed renewed cross-motions, oppositions and replies on that remaining question. The Court finds that the pending issue regarding TAs other than TAs to the field is now amenable to summary disposition and grants in part and denies in part the two parties' renewed motions for summary judgment.

TAs are prepared by four technical divisions within the Office of Assistant Chief Counsel with the Office of Associate Chief Counsel (Domestic): the Passthroughs & Special Industries division, the Income Tax & Accounting division, the Corporate division, and the Financial Institutions & Products division. *See* Def. Stmt. of Material Facts ("Def.SMF") ¶ 81. These technical divisions prepare TAs in response to requests from many different offices for many different purposes. The IRS has attempted to group the TAs by requester. *Id.* ¶ 84. One such group, TAs to the "field"-that is TAs to the district or regional offices of the IRS or the Office of Chief Counsel or Service Centers—has already been dismissed from the case. *See* Memorandum Opinion to Dismiss of March 31, 2000 ("Mem. Op. to Dismiss"). Four other

groups of TAs remain: (1) TAs to program managers in the national office, (2) TAs to the component offices of the national Office of Chief Counsel ("intra-divisional TAs"), (3) TAs to specific taxpayers, and (4) TAs to federal and state government agencies. *Id.* ¶ 84, 89. Within each of these groups, IRS further "sub-groups" the TAs with reference to their purpose. For example, TAs to program managers are divided among eight different purpose groups; and intranational office TAs are divided among four.

To further complicate matters, the IRS raises a host of different exemptions to justify withholding some or all of the TAs that were responsive to Plaintiff's FOIA request. These exemptions can be placed into three general categories. First, IRS again asserts FOIA Exemption 3 in conjunction with Internal Revenue Code § 6105 over one TA document (TR–45–1362–93) claiming treaty secrecy.[10] Second, IRS also continues to assert FOIA Exemption 7(E) for withholding TAs prepared for law enforcement purposes. Finally, IRS still withholds portions of certain TAs pursuant to the attorney work product privilege, the attorney client privilege, and the deliberative process privilege under FOIA Exemption 5.

The Court resolves the disputed disclosure of these documents as follows: With respect to the TA covered by the treaty exemption (TR–45–1362–93), the Court grants Defendant's renewed motion for summary judgment and denies Plaintiff's. With respect to the TAs prepared for law enforcement purposes, the Court grants in part and denies in part Plaintiff's and Defendant's renewed motions. With respect to TAs covered by the attorney work product privilege, the Court grants Defendant's

---

10. IRS initially claimed treaty secrecy for four TAs but has subsequently abandoned the claim for three of the four and now claims Exemption 3 only for TR–45–1362–93.

renewed motion and denies Plaintiff's. With respect to the TAs covered by the deliberative process privilege, the Court grants in part and denies in part Plaintiff's and Defendant's renewed motions. Finally, with respect to TAs covered by the attorney-client privilege, the Court denies Defendant's renewed motion. The Court discusses each of these determinations in turn.

### 1. TA Withheld Pursuant to FOIA Exemption 3 in Conjunction With Section 6105

■ FOIA Exemption 3 allows an agency to withhold information prohibited from disclosure by another statute if the statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." *See* 5 U.S.C. 552(b)(3)(B). Previously, IRS asserted FOIA Exemption 3 for information in one TA (TR–45–1362–93) in conjunction with a certain tax treaty between the United States and the government of Australia or Canada, arguing that treaties meet the Exemption 3 statute requirement.[11] *See* Defendant's Motion for Summary Judgment ("Def.Mot.") at 27–28; Defendant's Renewed Motion for Summary Judgment ("Def.Renew.Mot.") at 11–13. The Court

held in its earlier opinion that the parties must further brief the Court on this particular issue. *See* Mem. Op. for Summ. J. at 14. Since the date of that opinion, however, there has been a new development in the law. On December 21, 2000, Congress enacted a new Section 6105 to the Internal Revenue Code.[12] *See* 26 U.S.C. § 6105. Both parties agree that the new Section 6105 qualifies as a FOIA Exemption 3(B) statute and is applicable to this case.[13] *See* Def.'s Notice of Change in Applicable Law ("Def.Notice") at 3; Pl. Resp. to Notice at 1.

Section 6105 provides that, as a general rule, "tax convention information shall not be disclosed." 26 U.S.C. § 6105(a), *reported in* 146 Cong. Rec. H12399 (daily ed., Dec. 15, 2000). Tax convention information includes:

"(A) [any] agreement entered into with the competent authority of one or more foreign governments pursuant to a tax convention;

(B) an application for relief under a tax convention;

(C) any background information related to such agreement or application;

---

**11.** Because IRS is withholding the identity of the treaty partner, IRS does not definitively disclose which treaty is at issue here and only informs the Court that the treaty in question is either the treaty between the United States and Australia or the treaty between the United States and Canada.

**12.** Specifically, on December 21, 2000, the Consolidated Appropriations Act of 2001 became law. *See* P.L. 106–554 (Dec. 21, 2000). This Act incorporated the Community Renewal Tax Relief Act of 2000 which includes the new Section 6105 to the Internal Revenue Code. *See* H.R. 5662, *reported in* 146 Cong. Rec. H12387–H12405 (Dec. 15, 2000). Plaintiff asks that the Court issue a scheduling order providing (1) a time for IRS to present its evidentiary showing in support of its

claims under § 6105, (2) a time for Plaintiff to respond, including time for discovery on any disputed evidentiary matters, and (3) a briefing schedule. *See* Pl.'s Mem. of New Legislation and Resp. to Def.'s Notice of Change to Applicable Law ("Pl. Resp. to Notice") at 1–2. IRS does not oppose the Court issuing such a schedule. *See* Def.'s Reply to Pl.'s Mem. and Resp. to Notice of Change in Applicable Law ("Def. Reply to Pl. Resp. to Notice") at 1. However, the Court agrees with IRS that a long briefing schedule is not necessary for resolving this narrow issue relating to § 6105.

**13.** "The provision [26 U.S.C. § 6105]... applies to all documents in existence on, or created after, the date of enactment." Conf. Rep. 106–1033, *reported in* 146 Cong. Rec. H12414 (daily ed., Dec. 15, 2000).

(D) documents implementing such agreement; and

(E) any other information exchanged pursuant to a tax convention which is treated as confidential or secret under the tax convention."

26 U.S.C. § 6105(c)(1)(E).[14] The information contained in the withheld TA here fits under the last element of the definition, as it was received "pursuant to a tax convention," and the information is being withheld in accordance with tax treaty secrecy clauses.[15] *See* Def. Reply to Pl. Resp. to Notice, Ex. 1 ("2d Sissman Decl.") at ¶ 2–3.[16] Thus, the withheld TA meets the definition of "tax convention information" and falls within the general confidentiality rule of Section 6105(a).

Plaintiff also argues that IRS has not established that it has complied with the requirements of Section 6105(b)(3). *See* Pl. Resp. to Notice at 7–16. Section 6105(b)(3) provides that the general confidentiality rule of Section 6105(a) does not apply to "any tax convention information *not* relating to a particular taxpayer if the Secretary [of the Treasury] determines, after consulting with [the treaty partner], that such disclosure would not impair tax administration." 26 U.S.C. § 6105(b)(3)

(emphasis added). Here, however, the document at issue concerns a particular taxpayer, and thus, Plaintiff's argument is inapplicable. The withheld TA was written to assist in the IRS's response to a tax treaty partner's request for legal advice— specifically, whether the proceeds from particular transactions undertaken by an identified taxpayer were treated as taxable income under a certain section of the Internal Revenue Code. *See* 2d Sissman Decl. at ¶ 3. Since the withheld document is taxpayer-specific, IRS does not need to consult with the tax treaty partner nor show that disclosure would not impair tax administration. *See* 26 U.S.C. § 6105(b)(3); *see also* Conf. Rep. No. 106–1033, *reported in* 146 Cong. Rec. H12414 (daily ed., De. 15, 2000) ("taxpayer-specific information could not be publicly disclosed, even if it would not impair tax administration"). Because the withheld document here contains taxpayer-specific information, the TA at issue containing tax convention information is protected under the general confidentiality rule of Section 6105(a), and accordingly, exempt under FOIA Exemption 3.

Plaintiff further argues that even if some portion of the TA is exempt, IRS

---

**14.** A tax convention is defined as:

"(A) any income tax or gift and estate tax convention, or

(B) any other convention or bilateral agreement... providing for the avoidance of double taxation, the prevention of fiscal evasion, nondiscrimination with respect to taxes, the exchange of tax information with the United States, or mutual assistance in tax matter."

26 U.S.C. § 6105(c)(2).

**15.** IRS explains that although the exchange of information articles (Article 25 ¶ 2 of the Australian Treaty and Article XXVII ¶ 21 of the Canada Treaty) do not specifically set forth that the "identity of a country" or "identity of a treaty partner" is to remain confidential, a treaty partner seeking information from the

United States expects its identity and the content of that communication to remain confidential under the treaty articles. *See* Def. Opposition to Pl. Renewed Cross–Motion for Summary Judgment ("Def. Opp. to Pl. Renew. Mot.") at 7–8.

**16.** Plaintiff argues that the IRS's supporting declarations must be from individuals who have "personal knowledge" of the circumstances of the drafting of the TA, the receipt of information from treaty partners, or the like. *See* Pl. Resp. to Notice at 4–6. Notwithstanding Plaintiff's objections, the Court finds that Sissman's Second Declaration, in which she states that she is aware of the information contained in the TA because "it is clear from the face of this TA," sufficiently supports IRS's Exemption 3(B) argument. .

must apply the general FOIA segregation requirement to the TA in question, and release any non-taxpayer-specific information. *See* Pl. Resp. to Notice at 10–11. In particular, Plaintiff points to a D.C. Circuit decision which held that discussions of tax law principles, legal analysis or legal conclusions in certain Field Service Advice Memoranda ("FSA") were not protected by Internal Revenue Code Section 6103. *See Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C.Cir.1997) (holding that legal analysis or legal conclusions are not "return information" protected under Section 6103); 26 U.S.C. § 6103.[17] Plaintiff contends that similar to Section 6103, Section 6105 requires the segregation and disclosure of legal analysis of a tax treaty or of U.S. or foreign tax law. *See* Pl. Resp. to Notice at 10–11. However, the Court agrees with IRS that at least in regard to this particular "tax convention information" document, the legislative history reflects congressional intent to exempt the entire document. *See* Def. Reply to Pl. Resp. to Notice at 4.[18]

The legislative history suggests that Section 6105 is separate and distinct from Section 6103. *See* Conf. Rep. 106–1033, *reported in* 146 Cong. Rec. H12412–14 (daily ed., Dec. 15, 2000). In enacting Section 6105, Congress was responding in particular to the *Tax Analysts*, a D.C. Circuit opinion issued in 1997. *See id.* at H12413. In that case, the circuit court held that while FSAs are subject to disclosure under Section 6103, assertions of treaty secrecy privilege must be further addressed by the district court. *See Tax Analysts*, 117 F.3d at 620. While this issue was still pending in the district court, Congress passed the new provision. Section 6105, which directly prohibits disclosure of tax convention information. *See* Conf. Rep. 106–1033, *reported in* 146 Cong. Rec. H12413 (daily ed., Dec. 15, 2000). In other words, Congress expressed its clear intent that regardless of their exemption status under Section 6103, FSAs are fully exempt under Section 6105 if they qualify as tax convention information. Accordingly, the reasoning of the circuit court in *Tax Analysts*, which interpreted only Section 6103, is not controlling here.

However, *Tax Analysts* does provide guidance on how to interpret the new Section 6105. The circuit court first looked to the language of Section 6103. *See Tax Analysts*, 117 F.3d at 613–15. The circuit court noted that each specific item listed as "return information" in Section 6103(b)(2)(A) is factual in nature, and therefore, reasoned that legal analysis and conclusions probably were not meant to be "return information." *See id.* at 613–14.

---

**17.** Return information includes the following facts:

[A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A).

**18.** IRS also asserts other FOIA exemptions other than Section 6105 as legal justification for withholding this TA. *See* Def. Reply to Pl. Resp. to Notice at 5; Defendant's Opposition to Plaintiff's Renewed Cross–Motion for Summary Judgment ("Def. Opp. to Pl. Renew. Mot") at 7, n. 2 and 9, n. 3. However, it is unnecessary for the Court to address these other exemptions since the Court holds that Section 6105 is sufficient justification for withholding of the TA in its entirety under FOIA Exemption 3.

In contrast, the legislative history of Section 6105, in conjunction with the language of the provision itself, reveals that Congress considered an "explanation of law" to fall within exempted tax convention information. *See* Conf. Rep. 106–1033, *reported in* 146 Cong. Rec. H12413 (daily ed., Dec. 15, 2000). As discussed above, there are five different categories of "tax convention information." *See* 26 U.S.C. § 6105(1)(A)-(E). As to competent authority agreements, the first category of tax convention information, Congress states that "generally, [such agreements] do *not* contain an explanation of the law or application of law to facts." Conf. Rep. No. 106–1033, *reported in* 146 Cong. Rec. H12413 (daily ed., Dec. 15, 2000) (emphasis added). Congress does not articulate a similar "understanding" in regard to any of the other four categories of tax convention information, including the fifth category, which is at issue in this case.[19] This suggests that Congress, by not expressly excluding "legal explanations" from the other categories of tax convention information as it did for the first category, "understood" that the fifth category of tax convention information could "contain an explanation of the law or application of law to facts" and still be exempt. Conf. Rep. No. 106–1033, *reported in* 146 Cong. Rec. H12413 (daily ed., Dec. 15, 2000)

The purpose of Section 6105 also indicates that the TA in question, including the legal opinion it may contain, is exempt as tax convention information. In addition to the language of the provision, the circuit court in *Tax Analysts* placed even greater emphasis on the purpose of Section 6103 in concluding that legal analysis is not "return information." *See Tax Analysts*, 117 F.3d at 615–16. The court concluded that

Section 6103's core purpose of protecting taxpayer privacy was not served by exempting legal analyses and conclusions as "return information." *See id.* (finding that the other concerns articulated by IRS—that revealing the legal analysis in FSAs would be disruptive to its enforcement efforts and might discourage those in the field from seeking national office advice—are not relevant to the core purpose of Section 6103). In contrast, in declining to disclose the TA at issue here, IRS has expressed the precise concern that Congress sought to address in enacting Section 6105. One of the primary purposes of Section 6105 is to avoid adversely affecting the working relationship among treaty partners. *See* Conf. Rep. No. 106–1033, *reported in* 146 Cong. Rec. H12414 (daily ed., Dec. 15, 2000). In particular, the Conference Report specifically states that the "association of a particular treaty partner with a specific issue or matter" is protected as tax convention information under Section 6105. *See id.* at H12413. IRS here seeks to protect the identity of the tax treaty partner and the fact that this particular country made a specific request for legal advice regarding the particular transactions of a certain identified taxpayer. *See* 2d Sissman Decl. at ¶ 2–3. Furthermore, IRS has explained that because the TA in question was generated as a result of a communication from a treaty partner, the disclosure of the discussion and analysis contained therein would reveal the substance of that communication; the very content which is considered confidential under the treaty articles. *See* Def. Opp. to Pl. Renew. Mot at 8–9. Clearly, to order disclosure of the TA at issue here would thwart the purpose of Section 6105—in general, to avoid adversely affect-

---

19. The fifth category of tax convention information at issue here is "information exchanged pursuant to a tax convention which is treated as confidential or secret under the tax convention."

ing working relationships with treaty partners, and in particular, to protect the association of a particular treaty partner with a specific issue or matter. The Court cannot agree with Plaintiff that this TA's legal analysis or conclusions relating to a tax treaty or tax law must be segregated and disclosed. Accordingly, the Court grants IRS's renewed motion for summary judgment with respect to this TA (TR–45–1362–93).

### 2. Portions of TAs Withheld Pursuant to FOIA Exemption 7(E)

■ IRS also withholds portions of sixteen TAs pursuant to FOIA Exemption 7(E), *see* Def. Renew. Mot. at 14, which protects from disclosure information

compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . .

(E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7). To invoke Exemption 7(E), IRS must first meet the "threshold" statutory requirement and prove that the documents in question were compiled for "law enforcement purposes."[20] *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). Exemption 7 can be claimed with regard to documents generated pursuant to civil enforcement investigations. *See Windels, Marx, Davies & Ives v. Department of Commerce*, 576 F.Supp. 405, 413 (D.D.C.1983) (citing *Rural Housing Alliance v. United States Department of Agriculture*, 498 F.2d 73, 81 (D.C.Cir. 1974)). However, the D.C. circuit court distinguishes between agencies serving principally the cause of criminal law enforcement and agencies having an admixture of law enforcement and administrative functions. *See Pratt v. Webster*, 673 F.2d 408, 416–19 (D.C.Cir.1982). While a court may apply a more deferential attitude toward Exemption 7 claims of "law enforcement purpose" made by a criminal law enforcement agency, for agencies whose principal function is not law enforcement, it is appropriate to apply more exacting scrutiny. *See id.* Accordingly, in assessing the Exemption 7 claim of IRS, clearly a mixed-function agency, this Court must apply the more exacting scrutiny articulated in *Rural Housing Alliance v. Department of Agriculture*, 498 F.2d 73, 81–82 (D.C.Cir.1974).[21]

In *Rural Housing Alliance*, the D.C. circuit court held that in the context of a mixed-function agency, Exemption 7 embraces only "investigations which focus directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions." 498 F.2d at 81. The purpose of the document is thus the crucial factor-that is, to cross Exemption 7's threshold, the information at issue must have been gathered in the course of "an inquiry as to an identifiable possible violation of law . . . whether the individual were a private citizen or a government employee." *Id.* at 82.

While some of the disputed TAs meet this threshold test, some do not. The TAs that focus directly on specifically alleged illegal acts of a particular identified case or individual meet the threshold. These in-

---

**20.** The Court notes that both parties failed to include this crucial analysis of the statutory threshold requirement in their motions.

**21.** The Court again notes with disappointment that both parties failed to discuss this controlling case.

clude TR–45–396–92, TR–45–1465–94, TR–45–472–93, TR–45–531–93, TR–45–304–94, and TR–45–1763–93; all of which were written in connection with an identified case. *See Vaughn* Index (submitted June 6, 2000) Ex. 2 at 1 (TA discusses "an identified case which was being litigated by [IRS] at the time"), 10 (TA addresses "whether a particular case should be designated for litigation"), 19 (TA discusses whether IRS "should appeal an adverse decision of the Tax Court"), 49 (TA gives legal advice with respect to "identified issues arising in a case which was being litigated by [IRS] in bankruptcy court"), 57 (TA recommends whether IRS should concede "an issue arising in a case currently in litigation"), and 65 (TA gives legal advise in connection with "a specific issue arising in a case in litigation"). In addition, TR–45–396–93 and TR–45–511–93, two identical documents which discuss "a certain action contemplated by IRS to combat a known scheme by an identified group of persons to avoid the payment of federal income taxes," also satisfy the threshold. *See id.* at 29, 31.

In contrast, TR–45–0008–95, TR–45–798–93, TR–45–1000–94/Tr–45–1001–94, TR–45–1691–94, TR–45–699–93, TR–45–396–92,[22] TR–45–934–94, and TR–45–933–94 were not compiled for "law enforcement purposes" since none of these TAs focus on a specifically alleged illegal act of any particular identified case or individual. TR–45–0008–95 gives "legal advice concerning an issue arising with respect to the filing of documents by taxpayers" in general. *See id.* at 27. It does not focus on any

particular alleged illegal act of any particular taxpayer. *See id.* Similarly, TR–45–798–93 does not discuss any alleged illegal act, but simply assesses proposed changes to an identified income tax form. *See id.* at 33. TR–45–1000–94/Tr–45–1001–94 discusses a particular case, but the case in question has been completely resolved, and more importantly, the purpose of the TA is to project the consequences, including administrative difficulties, of extending the holding of that decided case to other areas. *See id.* at 35. TR–45–1691–94 comments on proposed changes to an identified income tax form and thus cannot be considered to have been written "for law enforcement purpose." *See id.* at 37. Finally, TR–45–699–93, TR–45–396–92 (hereinafter "TR–45–396–92–A"), TR–45–934–94, and TR–45–933–94 also do not focus on any possible violation of the law, but simply evaluate a proposed draft of the Appeals Settlement Guideline ("ASG"). *See id.* at 39 (TA discusses the problem of certain cases relied upon in the analysis section of the ASG not being applicable to the facts presented in the ASG), 41 (TA comments on the legal strengths and weaknesses of a particular position taken by IRS in the draft of the ASG for Structured Settlement prior to finalization), 44 (TA comments on the legal strengths and weaknesses of a particular position taken by IRS in the draft of the ASG for Amortization of Cable Television Franchises prior to finalization), 47 (TA comments on the legal strengths and weaknesses of a particular position taken by IRS in the draft of the ASG for Amortization of Federal Com-

---

**22.** The Court notes with concern that this particular TA, beginning on page 41 of the *Vaughn* index, Ex. 2, is numbered as TR–45–396–92 (hereinafter "TR–45–396–92–A"), the exact same number as the first TA in the *Vaughn* index, Ex. 2. IRS posits that while the first TR–45–396–92 discusses an identified case being litigated by IRS, the TR–45–396–

92–A beginning on page 41 comments on a particular position taken by IRS in the draft of the ASG for Structured Settlement prior to finalization. A careful filing of the *Vaughn* index would have revealed that one of these documents was misnumbered and helped to avoid unnecessary confusion.

munications Broadcast License prior to finalization). IRS has failed to meet the threshold requirement under Exemption 7(E) to justify withholding any portion of these eight TAs. Furthermore, although IRS allegedly asserts other FOIA exemptions for withholding these documents in their entirety, IRS declines to inform the Court which exemption it is claiming for which particular TA.[23] *See id.* at 27, 33, 35, 37, 39, 41, 44, 47. Therefore, IRS has failed to meet its burden of justifying withholding these eight TAs in their entirety and is ordered to disclose them in their entirety. Accordingly, the Court grants Plaintiff's renewed motion for summary judgment and denies Defendant's with respect to TR–45–0008–95, TR–45–798–93, TR–45–1000–94/Tr–45–1001–94, TR–45–1691–94, TR–45–699–93, TR–45–396–92–A, TR–45–934–94, and TR–45–933–94. As for the documents that withstand the *Rural Housing Alliance* threshold inquiry, the Court now proceeds with its analysis.[24]

With respect to TR–45–396–92, TR–45–1465–94, TR–45–472–93, TR–45–531–93, TR–45–304–94, and TR–45–1763–93, IRS withholds portions under Exemption 7(E) and also asserts the attorney work product privilege to withhold these six TAs in their entirety. Because the Court finds that these documents are protected as attorney work product under FOIA Exemption 5, as further explained below, there is no need to address whether some portions of these documents would also be protected under Exemption 7(E). That leaves only the two identical TAs, TR–45–396–93 and TR–45–511–93, to be considered under Exemption 7(E).[25]

 To claim protection under Exemption 7(E), IRS must show that the two documents are protected by one of Exemption 7(E)'s two distinct protective clauses. The first clause of Exemption 7(E) protects "records or information compiled for law enforcement purposes… [that] would disclose *techniques* and *procedures* for law

---

23. Specifically, IRS repeats the same language for all of the above eight documents, stating "[t]his *Vaughn* Index does not discuss the other FOIA exemptions asserted by the Service for withholding this memorandum or portions thereof." *See id.* at 27, 33, 35, 37, 39, 41, 44, 47, IRS seems to be implying that IRS has asserted other FOIA exemptions for these eight documents in some other previously submitted filings. In its previous ruling, the Court specifically stated, "[t]o the extent that either party is relying on material previously submitted, such material should be incorporated by specific reference to the document and page number where it can be found." *See* Mem. Op. for Summ. J. at 17 n. 9. However, IRS has failed to do so here. Without citing—or directing the Court in any way—to any particular brief, declaration, or *Vaughn* Index, IRS seems to expect this Court to search through all its earlier filings in the last several years, find the exact reference for each of these eight documents, and somehow discover which other FOIA exemptions it has previously claimed. The Court has voluntarily searched through IRS's earlier filings and found *no specific reference to these eight doc-*

uments. It is the burden of IRS to prove that certain FOIA exemptions apply to these documents. Clearly, IRS has failed to carry that burden.

24. The documents which meet the threshold are: TR–45–396–92, TR–45–1465–94, TR–45–472–93, TR–45–531–93, TR–45–304–94, TR–45–1763–93, TR–45–396–93 and TR–45–511–93.

25. IRS withholds only portions of TR–45–396–93 and TR–45–511–93 under Exemption 7(E) but claims to withhold them in their entirety under other unidentified FOIA exemptions. The Court again notes that despite the Court's voluntary search through IRS's extensive filings, it has found no specific reference to these two documents nor any other exemptions claimed for these TAs. It is the burden of IRS to prove that certain FOIA exemptions apply to these documents in their entirety. Again, IRS has failed to carry that burden. Therefore, the Court will only address whether Exemption 7(E) applies to certain portions of these two TAs.

enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E) (emphasis added). The second clause of Exemption 7(E) protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could be reasonably be expected to *risk circumvention of the law*." *Id.* (emphasis added). IRS asserts that the withheld portions of the two TAs fall within the second clause of Exemption 7(E). *See Vaughn* Index (submitted June 6, 2000) Ex. 2 at 30, 32. The second clause of Exemption 7(E) protects law enforcement guidelines "compiled for law enforcement purposes" only if they "could reasonably be expected to risk circumvention of law." *PHE, Inc. v. United States Dep't of Justice*, 983 F.2d 248, 251 (D.C.Cir.1993).[26] IRS has satisfied its burden of showing that disclosure of the withheld pages 1 and 2 of these two identical TAs would risk circumvention of the law. These two pages summarize how a certain tax avoidance scheme is carried out, including identification of vulnerabilities in the IRS's operations which allow this scheme to be successful. *See Vaughn* Index (submitted June 6, 2000) Ex. 2 at 29, 31. The disclosure of this particular tax avoidance scheme to the public would allow other taxpayers to copy and similarly engage in the same tax avoidance scheme. More importantly, disclosure of vulnerabilities in the IRS's operations, which allow this particular scheme to work, could facilitate other taxpayers to develop new and varied tax avoidance schemes which could also successfully manipulate such vulnerabilities. Therefore, the Court finds that disclosure of the withheld pages of these two TAs could reasonably be expected to risk circumvention of the law. Accordingly, with respect to pages 1 and 2 of TR–45–396–93 and TR–45–511–93, the Court grants Defendant's renewed motion for summary judgment and denies Plaintiff's.[27]

### 3. Portions of TAs Withheld Pursuant to FOIA Exemption 5

Exemption 5 of the FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts have "construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including "materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive 'deliberative process privilege,'" all of which are asserted by IRS in this case. *Taxation With Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C.Cir.1981) (*"TWRF"*) (citations omitted).

---

**26.** Plaintiff argues that IRS must prove disclosure of the withheld material would create a "significant" risk of circumvention of the law. *See* Pl. Renewed Cross–Motion for Summary Judgment and Opposition to Def. Renewed Cross–Motion for Summary Judgment ("Pl.Renew.Mot.") at 27 (quoting *Crooker v. Bureau of Alcohol Tobacco, & Firearms*, 670 F.2d 1051, 1074 (D.C.Cir.1981)). However, the Court notes that subsequent D.C. Circuit cases which discuss or mention the "risk of circumvention" exemption do not emphasize nor even suggest that it must be a "significant" risk. *See PHE, Inc.*, 983 F.2d at 249–251 (discussing Exemption 7(E)); *Billington*

*v. U.S. Dept. of Justice*, 233 F.3d 581, 583 n. 3 (D.C.Cir.2000); 2; *Tax Analysts*, 117 F.3d at 620; *Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830–31 (D.C.Cir.1983).

**27.** The Court emphasizes that this second clause of Exemption 7(E) protects only the portions of the TAs that specifically correlate to foreseeable harm to law enforcement efforts (pages 1 and 2 only). Thus, IRS is required to disclose all reasonably segregable, nonexempt information. *See PHE*, 983 F.2d at 252.

### a. Attorney Work Product Privilege

IRS asserts the attorney work product privilege to withhold six TAs in their entirety. *See Vaughn* Index (submitted June 6, 2000) Ex. 2 at 1, 8, 19, 49, 57, 65. Attorney work product privilege shields materials "prepared in anticipation of litigation or for trial by or for [a] party or by or for that . . . party's representative (including the . . . party's attorney, consultant, . . . or agent)." Fed.R.Civ.P. 26(b)(3); *see also Hickman v. Taylor*, 329 U.S. 495, 509–10, 67 S.Ct. 385, 91 L.Ed. 451 (1947).[28]

 The parties are in dispute about what constitutes "true" attorney work product. Plaintiff contends that attorney work product privilege protects only "the mental impressions, conclusions, opinions or legal theories of an attorney" and "factual materials prepared in anticipation of litigation." *See* Pl. Renew. Mot. at 20. Plaintiff further argues that work product does not include, and therefore "the requester is entitled to[,] the agency working law, legal analysis and conclusions." *See id.* at 21 (quoting *Tax Analysts v. IRS*,

1998 WL 419755 at *3 (D.D.C. May 1, 1998)). However, the Court agrees with IRS that even assuming that portions of the TAs at issue constitute IRS's working law, this information is still protected by the attorney work product privilege. *See* Def. Opp. to Pl. Renew. Mot. at 15. The Supreme Court has explicitly stated that "a memorandum subject to the affirmative disclosure requirement of [Section] 552(a)(2) [ (the FOIA provision which requires disclosure of agency's working law) ] is nevertheless shielded from disclosure under Exemption 5[if] it contain[s] a privileged attorney's work product." *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 360, n. 23, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) (*"FOMC"*).[29] In addition, the D.C. Circuit opinion in *Tax Analysts* is not to the contrary. *See Tax Analysts*, 117 F.3d at 620. Plaintiff quotes a D.C. district court opinion which states,

> [g]iven the entire tenor of the [Court of Appeals's opinion in *Tax Analysts* ], it is clear that however "work product" is defined, and therefore redacted, the re-

**28.** To claim attorney work product privilege, IRS must first show that the six TAs meet Exemption 5's general "inter-agency or intra-agency" threshold requirement. *See Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C.Cir. 1980). IRS claims and Plaintiff does not dispute that TR–45–396–92, TR–45–1465–94, TR–45–472–93, TR–45–531–93, TR–45–304–94, and TR–45–1763–94 are inter-agency or intra-agency memoranda providing advice from one of the technical divisions within the Office of the Associate Chief Counsel to other offices within the national office or field offices of either IRS or the Office of Chief Counsel. *See Vaughn* Index (submitted June 6, 2000) Ex. 2 at 4, 13, 22. 52, 59, 67. IRS has thus met this threshold burden.

**29.** Plaintiff is correct in stating that the attorney work product privilege was not the main determinative issue in *FOMC. See* Pl. Reply to Def. Opposition to Pl. Renewed Cross–Motion for Summary Judgment ("Pl. Reply to Def.

Opp. to Pl. Renew. Mot.") at 7. The facts of *FOMC* were decided on the legal question of whether to incorporate a qualified privilege for confidential commercial information. *See* 433 U.S. at 360, 97 S.Ct. 2691. However, in reaching that decision, the Supreme Court clarified its previous decision in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153–54, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), definitively stating that certain privileged information eligible for protection under Exemption 5, such as attorney work product, even if they are "statements of general policy . . . formulated and adopted by the agency," do not conflict with the mandatory disclosure under Section 552(a)(2). *FOMC*, 443 U.S. at 360, n. 23, 99 S.Ct. 2800. Even if dicta, the Supreme Court's meaning is clear—"a memorandum subject to the affirmative disclosure requirement of [Section] 552(a)(2) ·[is] nevertheless shielded from disclosure under Exemption 5[if] it contain[s] a privileged attorney's work product." *Id.*

quester is entitled to the agency working law . . .

*Tax Analysts v. IRS*, 1998 WL 419755 at *3 (D.D.C. May 1, 1998).

The Court cannot agree with the Plaintiff's conclusion. The circuit court in *Tax Analysts* simply held, in one part of its opinion addressing the deliberative process privilege claim by IRS, that FSAs are not entitled to a blanket exemption of deliberative process privilege because they are not deliberative process material but instead are agency working law. *See Tax Analysts*, 117 F.3d at 616–18. The court also noted, however, that although a blanket exemption of deliberative process privilege does not apply to all FSAs, the applicability of other specific FOIA exemptions deserves a separate and distinct analysis. *See id.* at 620. Thus, the circuit court's analysis of the deliberative process privilege has no bearing on whether certain FSAs that are exempted under the attorney work product privilege must also be disclosed as agency working law. Furthermore, the Court observes that the Supreme Court itself distinguished between the deliberative process privilege and the attorney work product privilege, explaining that the former does not trump the mandatory disclosure requirement under Section 552(a)(2), but the latter does. *See FOMC*, 443 U.S. at 360, n. 23, 99 S.Ct. 2800. Accordingly, the Court cannot agree with Plaintiff that attorney work product does not include agency working law. Therefore, as long as the eight TAs in dispute are documents that were prepared in anticipation of litigation or for trial, they can be withheld, including any agency working law that they may contain.

TR–45–396–92, TR–45–1465–94, TR–45–472–93, TR–45–531–93, TR–45–304–94, and TR–45–1763–93 are all documents prepared for trial. TR–45–396–92 was written to prepare for litigating a particular issue in an identified case. *See Vaughn* Index (submitted June 6, 2000) Ex. 2 at 1–3. Notably, the document also makes a recommendation as to whether IRS should settle, rather than litigate, the case. *See id.* The attorney work product privilege covers such documents as TR–45–396–92 which "relate to possible settlements" of litigation. *See Cities Serv. Co. v. FTC*, 627 F.Supp. 827, 832 (D.D.C.1984), *aff'd*, 778 F.2d 889 (D.C.Cir.1985) (unpublished table decision). TR–45–1465–94 is also protected as attorney work product as it was written to address whether a particular case should be designated for litigation. *See Vaughn* Index (submitted June 6, 2000) Ex. 2 at 10–12. TR–45–472–93 was also prepared in anticipation of litigation as it assesses whether IRS should appeal an adverse decision of the Tax Court. *See id.* at 19–20. TR–45–531–93 also falls within the attorney work product privilege since it was written to assess whether IRS should litigate certain identified issues arising in a case which was being litigated by IRS in bankruptcy court. *See id.* at 49–51. TR–45–304–94 is also protected as a document written to recommend whether IRS should concede an issue arising in a case currently in litigation. *See id.* at 56–58. Finally, TR–45–1763–93 is also protected as attorney work product since it was written in connection with a specific issue arising in a case in litigation. *See id.* at 65–66. Therefore, with respect to TR–45–396–92, TR–45–1465–94, TR–45–472–93, TR–45–531–93, TR–45–304–94, and TR–45–1763–93, the Court grants Defendant's renewed motion for summary judgment and denies Plaintiff's.

**b. Deliberative Process Privilege**

IRS contends that some twenty-six TAs are shielded from disclosure by the executive or governmental deliberative process privilege, which is one of the three privileges incorporated by FOIA Exemption 5.

See 5 U.S.C. § 552(b)(5); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C.Cir.1980). The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Three policy purposes constitute the basis for this privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against the public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See Coastal States Gas Corp.*, 617 F.2d at 866.

■ To invoke the privilege, the document must be (1) predecisional in that it was "generated before the adoption of agency policy" *and* (2) deliberative in that it "reflects the give-and-take of the consultative process." *Id.* (emphasis added); *see also Tax Analysts*, 117 F.3d at 616. Thus, IRS must establish that the withheld TAs "contain 'the ideas and theories which go into the making of the law' and not 'the law itself.'" *Arthur Andersen & Co. v. Internal Revenue Sec.*, 679 F.2d 254, 258 (D.C.Cir.1982) (quoting *Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C.Cir.1971)). "[A]n agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege..." *Coastal States*, 617 F.2d at 867. Accordingly, this "exemption is to be applied 'as narrowly as consistent with efficient Government operation.'" *Id.* at 868 (quoting S. Rep. 89–813 at 9 (1965)).

In its previous motion for summary judgment, the basic thrust of IRS's deliberative process argument was that intra-national office and program manager TAs are both predecisional and deliberative because they flow "horizontally" as part of a discussion or dialogue between equals. *See* Def. Mot. 28–31. In this regard, IRS likened these TAs to LMs, which flow upward to assist higher level reviewers as they develop revenue rulings, and tried to distinguish these TAs from TAs to the field and FSAs, which flow authoritatively downward or outward from the Office of Chief Counsel to be applied by the field to taxpayers. *See* Mem. Op. for Summ. J. at 15. However, the Court found that such broad categorical statements about the intra-national office and program manager TAs were not corroborated by the TAs submitted for *in camera* review. *See id.* In addition, the Court deemed the *Vaughn* index, which recycled the same justification for withholding all of the various TAs without regard to the differences among them, inadequate. *See id.* at 16 (quoting *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 20 (D.C.Cir.1998) ("An affidavit that contains merely a 'categorical description' of redacted material coupled with categorical indication of anticipated consequences is clearly inadequate.")). Furthermore, the Court was not convinced that IRS had properly shown that the allegedly privileged material is so intertwined with non-privileged material that it could not be segregated. *See id.* at 16–17. Accordingly, the Court remanded this portion of the case to the agency for a supplemental *Vaughn* index including the necessary information. *See id.* at 17. IRS has since complied with the Court's request, and the Court is now prepared to make its final ruling.

#### i. TAs to Program Managers

■ TAs to program managers arise in eight situations: (1) TAs prepared in a

review for technical accuracy of booklets, pamphlets, tax forms and instructions; (2) TAs with respect to the preparation of Appeal Settlement Guidelines; (3) TAs with respect to draft Industry Specialization Program papers; (4) TAs with respect to draft Market Segment Specialization Program papers; (5) TAs responding to requests from the Public Affairs Division; (6) TAs directed to national office program managers with respect to other policy and program initiatives; (7) TAs prepared with respect to the liability of a particular taxpayer; and (8) TAs that address the interpretation or application of the internal revenue laws generally. *See* Def. SMF ¶ 87. IRS asserts that ten such TAs to program managers (TR–45–2233–93, TR–45–2820–92, TR–955–93, TR–45–2164–93, TR–45–307–93, TR–45–1383–93,[30] TR–45–1974–93, TR–45–1796–93, TR–45–2473–93, and TR–45–1642–94) are predecisional and deliberative. IRS bases this contention on the argument that these TAs are part of a larger deliberative process relating to the scope and direction of program initiatives, which generally result in publicly issued tax forms, Internal Revenue Manual Instructions to staff, Policy Statements; Industry Specialization Papers, or Appeals Settlement Guidelines. *See* Def. Renew. Mot. at 18. IRS further asserts that these TAs are more akin to LM-type deliberative materials, which lead up to final decisions on revenue rulings, *see* Mem. Op. for Summ. J. at 4–8, than to FSAs, which have been found to be statements of the considered policy of Chief Counsel's Office to personnel in the field. *See* Def. Renew. Mot. at 18 (construing *Tax Analysts*, 117 F.3d at 617). The Court, however, cannot agree that all portions of these nine TAs to program managers are deliberative materials.

As stated before, in order for IRS to invoke the deliberative process privilege, IRS must show that the TAs to program managers are predecisional, not post-decisional. Predecisional documents are thought generally to reflect agency "give-and-take" leading up to a decision that is characteristic of the deliberative process; post-decisional documents, on the other hand, often represent the agency's position on an issue, or explain such a position, and thus may constitute the "working law" of an agency which must be disclosed. *TWRF*, 646 F.2d at 677. In *Tax Analysts*, the D.C. circuit court declined to extend the privilege to the legal interpretation and analyses in FSAs, holding that they are post-decisional statements representing the legal position and considered view of the Chief Counsel's national office. 117 F.3d at 617. As the circuit court noted, FSAs contain the answers of the national office of the Office of Chief Counsel to legal questions, usually with reference to the situation of a specific taxpayer, submitted by field personnel. *See id.* at 609, 617. The circuit court found that the legal conclusions the Office of Chief Counsel constitute agency law, even if those conclusions are not formally binding, because the documents are "routinely used" and generally followed by field personnel. *See id.* In reaching its conclusion, the court also emphasized that the structure and purposes of the FSA system reveal that the national office is attempting to develop a body of coherent, consistent interpretations of the federal tax laws nationwide. *See id.* Therefore, the court concluded, rather than documents produced in the process of formulating policy, FSAs are themselves statements of an agency's legal position and cannot be viewed as predecisional.

---

**30.** The Court notes that IRS includes TR–45–1383–93 twice in the *Vaughn* Index (submitted March 30, 1999) Ex. 1 at 93–99 and in

Supplemental *Vaughn* Index (submitted July 7, 2000) Ex. 3 at 11–17.

The Court finds little reason to distinguish between FSAs in *Tax Analysts* and TAs to program managers related to a specific taxpayer [31] and TAs to program managers that address the mterpretation or application of the internal revenue laws generally.[32] Even IRS concedes that taxpayer-specific TAs are almost identical to FSAs. *See* Def. Stmt. of Genuine Issues in Opp. to Pl. Stmt. of Material Facts ("Def. Opp. to Pl. SMF") ¶ 3.12 (responding to Pl. Stmt of Material Facts ("Pl.SMF") ¶ 3.12). Like FSAs, TAs contain the national office's answers to legal questions submitted by IRS personnel, specifically program managers. Like FSAs, TAs to program managers consist of legal advice, including reviews of the proper interpretation of sources of tax law, such as, the I.R.C., regulations, revenue rulings, revenue procedures, court decisions and other legal authorities or precedents. *See* Def. Opp. to Pl. SMF ¶ 3.13 (responding to Pl. SMF ¶ 3.13). Moreover, even though they are open to revision prior to issuance, these TAs are treated as final documents once they leave the Office of Chief Counsel. *See* Pl. Response to Def. Stmt of Genuine Issue in Opp. to Pl. Stmt of Material Facts ("Pl. Resp. to Def. Opp. to Pl. SMF") ¶ 3.25 (quoting Kugler Dep. at 137–38). The Court fails to see how these TAs to program managers relating to specific taxpayer situations and TAs to program managers interpreting internal revenue laws are any different from FSAs that were at issue in *Tax Analysts*. Furthermore, to establish that the TAs do not constitute the "working law" of the agency, IRS must present to the Court (1) the "function and the significance of the [TAs] in the agency's decisionmaking process,"

(2) "the nature of the decisionmaking authority vested in the office or person issuing the disputed [TAs]," and (3) "the flow" of the TAs whether they are "from superiors to subordinates, or vice versa." *TWRF*, 646 at 678–81. However, IRS has failed to do so. Therefore, the Court finds that the following documents, which include the Office of Chief Counsel's legal conclusion relating to specific taxpayers, are not exempted, deliberative materials: TR–45–2233–93 (TA consisting of Office of Chief Counsel's legal analysis and conclusion regarding certain activities undertaken by a class of taxpayers), *see Vaughn* Index (submitted March 30, 1999) Ex. 1 at 1–6; TR–45–1383–93 (TA consisting of the Office of Chief Counsel's legal interpretations of certain sections of the Internal Revenue Code with regard to an issue arising with respect to a third party taxpayer), *see id.* at 93–98; TR–45–1974–93 (TA consisting of the Office of Chief Counsel's legal analysis and position regarding an issue of how certain sections of the Internal Revenue Code apply to a certain taxpayer), *see Vaughn* Index (submitted July 7, 2000) Ex. 3, at 1–5; and TR–45–2473–93 (TA consisting of the Office of Chief Counsel's legal analysis and position regarding whether a particular entity qualifies as an organization exempt from federal taxation), *see id.* at 17–21. In addition, the Court also finds that the legal conclusions that the Office of Chief Counsel provides to IRS's program managers regarding the tax laws generally are not protected as deliberative material. Accordingly, TR–45–2820–92 is not exempted from disclosure. *See Vaughn* Index (submitted March 30, 1999) Ex. 1 at 7–12 (TA consisting of the Office of Chief Counsel's

---

**31.** Type (7) of the TAs to program managers described above—TAs prepared with respect to the liability of a particular taxpayer.

**32.** Type (8) of the TAs to program managers described above—TAs that address the interpretation or application of the internal revenue laws generally.

interpretation of the requirements of a section of the Internal Revenue Code with respect to correspondence between taxpayers and the Service). The Court's *in camera* review of these documents also supports the conclusion that these TAs represent and explain the considered view of the national office of the Office of Chief Counsel on particular issues and therefore, are not protected under the deliberative process privilege. Accordingly, with respect to TR–45–2233–93, TR–45–1383–94, TR–45–1974–93, TR–45–2473–93, and TR–45–2820–92, the Court grants Plaintiff's renewed motion for summary judgment and denies Defendant's.[33]

■■■ However, the Court finds that the other five TAs to program managers— TR–955–93, TR–45–2164–93, TR–45–307–93, TR–1642–94, and TR–45–1796–93—are distinguishable from FSAs in *Tax Analysts*. Unlike TAs which contain the Office of Chief Counsel's interpretation of the law in reference to particular issues, these five TAs are part of a larger deliberative process reflecting a give-and-take discussion between the Office of Chief Counsel and IRS's program managers regarding proposed tax forms, possible administrative or legislative changes, and proposed amendments to the Internal Revenue Code. TR–955–93 clearly contains predecisional, deliberative material, consisting of suggestions and recommendations of an attorney in the Office of Chief Counsel relating to proposed changes to an income tax form and its instructions. *See Vaughn* Index (submitted March 30, 1999) Ex. 1 at 13–19. The final decision to adopt or reject the proposed new tax form and its accompanying instructions had not been reached, and the TA is only a part of a larger debate surrounding the possible changes. *See id.*

Similarly, TR–45–307–93 is a part of the larger deliberation of a proposed amendment to a section of the Internal Revenue Code, in which an attorney from the Office of Chief Counsel expresses his opinion as to the proposed change. *See id.* at 33–37. In addition, TR–45–2164–93 is also a document which is part of a larger deliberative process, recommending possible solutions to a noted problem with the collection and accounting of a particular type of tax. *See id.* at 27–32. In that document, the Office of Chief Counsel recommends one proposed method but also describes two alternative potential solutions, as opposed to stating a firm legal position on the matter. *See id.* Moreover, it is plain that the debate is ongoing between the Office of Chief Counsel and IRS as indicated by the fact that the TA reexamines a previous memoranda written by the Office of Chief Counsel on the same issue. *See id.* TR–45–1642–94 similarly reflects an ongoing, upward flow of discussion relating to a particular type of financial transaction. *See id.* at 20–27. This TA was sought by an IRS's program manager so that he may better prepare a reply to a congressional inquiry. *See id.* Therefore, TR–45–1642–94, containing the Office of Chief Counsel's recommendations regarding the position the program manager should take with respect to this matter, is predecisional and deliberative; until the program manager actually decides on what position to take and writes his reply to Congress, the deliberative process is still ongoing. Finally, TR–45–1796–93 is also a predecisional, deliberative document. *See Vaughn* Index (submitted July 7, 2000) Ex. 3, at 6–11. Although it addresses IRS's authority to verify the Employer Identification Numbers (EINs) for a specific class of taxpay-

---

33. The Court orders the release of TR–45–1383–94, TR–45–1974–93, and TR–45–2473–93, but return information, such as the identi- fied names of taxpayers and particular dollar amounts, are to be redacted.

ers, it is clear that the TA is not the final position or the considered view of the Office of Chief Counsel regarding this issue, but only a preliminary statement to be further reviewed by another component office of the Office of Chief Counsel. *See id.* The Court's *in camera* review of these documents also supports the conclusion that these four TAs are protected as part of a larger deliberative process. Accordingly, with respect to TR–955–93, TR–45–307–93, TR–45–2164–93, TR–1642–94, and TR–45–1796–93, the Court grants Defendant's renewed motion for summary judgment and denies Plaintiff's.

### ii. Intra-divisional TAs

■ IRS asserts the deliberative process privilege for sixteen intra-divisional TAs. Intra-divisional TAs result when one component of the Chief Counsel's Office advises another component that is assigned to create Technical Advice Memoranda ("TAMs"), Private Letter Rulings ("PLRs"), Field Service Advices ("FSAs"), or when one component is called on to advise on issues of concern to more than one of the Chief Counsel's component offices. *See* Def. Renew. Mot. at 15. IRS asserts that these intra-divisional TAs are by nature predecisional and deliberative, as they are solicited during the deliberative process from a secondary component that does not have authority to issue the final work product. *See id.* at 16. The Court agrees.

As stated above, to establish that the TAs do not constitute the "working law" of the agency, IRS must present to the Court the (1) "function and the significance of the [TAs] in the agency's decisionmaking process," (2) "the nature of the decisionmaking authority vested in the office or person issuing the disputed [TAs]," and (3) "the flow" of the TAs whether they are "from superiors to subordinates, or vice versa."

*TWRF,* 646 at 678–81. Here, IRS has adequately made such a showing. First, IRS has presented the function and the significance of these intra-divisional TAs. The TAs from one Office of Chief Counsel component to other components provides the issuing office's expertise on a subject within its jurisdiction, so that the requesting office that will ultimately issue the final work product (the TAMs, PLRs, and FSAs) can make the most sound decision regarding the Office of Chief Counsel's final position. *See* Pl. SMF at ¶ 3.22 (citing Kugler Dep. at 79–80). Second, the TAs are written by a component office without decisionmaking authority to a different component office that will eventually issue the final work product. Perhaps most importantly, the advice contained in these intra-divisional TAs are subject to modification or rejection prior to the finalization into the final work product as TAMs, PLRs or FSAs. *See* Def. Renew. Mot. at 16. Although a recipient of such a TA would be expected to follow it if the recipient agreed, if the recipient disagreed or had questions about the TA, further discussion of the matter to which the TA related would be expected. *See* Def. Opp. to Pl. SMF ¶ 3.10 (citing Brown Dep. at 142–43; Mattson Decl. ¶ 20). Furthermore, the Office of Chief Counsel commonly expects internal debate to follow TAs written between component offices of the national office. *See id.* (citing Mattson Decl. ¶¶ 17–20). In other words, while these intra-divisional TAs are circulating between and among the component offices within the national office, they constitute give-and-take discussion between components. Until the final work product is issued, the position of the Office of Chief Counsel is still under consideration; the intra-divisional TAs are part of that larger deliberative process. The *Vaughn* index supports, and IRS's *in camera* submission does not contradict, this conclusion. *See*

*Vaughn* Index (submitted March 30, 1999) Ex. 1, at 38–92, 99–146. The Court finds, therefore, that these intra-divisional TAs are protected by the deliberative process privilege. Accordingly, with respect to TR–31–107–93, TR–31–87–93, TR–31–1954–94, TR–31–230–94, TR–31–2121–92, TR–31–1281–94, TR–31–1237–94, TR–31–1235–94, TR–45–155–94, TR–1011–94, TR–45–2608–93, TR–45–2535–93, TR–31–1434–92, TR–31–2162–92, CC:INTL–0902–93, and CC:INTL–0251–94, the Court grants Defendant's renewed motion for summary judgment and denies Plaintiff's.

### c. Attorney–Client Privilege

IRS seemingly asserts the attorney-client privilege as to two TAs, TR–45–1642–94 and TR–45–2164–93.[34] *See Vaughn* Index (submitted June 6, 2000) Ex. 1 at 21, 28. In the Court's earlier opinion, the Court noted that IRS had narrowed its reliance on the attorney-client privilege as a basis for withholding to only one paragraph of one TA, TR–45–155–94. *See* Mem. Op. for Summ. J. at 17. In its *Vaughn* index previously filed on March 30, 1999, IRS asserted a "general" attorney-client privilege for various documents, including TR–45–1642–94 and TR–45–2164–93. *See Vaughn* index (submitted March 30, 1999) at 14–18, 19–22. However, in light of the D.C. Circuit's ruling in *Tax Analysts*, which limited the scope of the attorney-client privilege to "audit information," 117 F.3d at 619–20, IRS narrowed its assertion of this privilege to TR–45–155–94 alone, apparently foregoing the privilege assertion for all other TAs, including TR–45–1642–94 and TR–45–2164–93. *See* IRS's Opp. to Pl. Supp. Mot. for Summ. J. at 2 n. 2 ("The only TA for which the defendant is asserting the 'audit information' attorney-client privilege is TR–45–155–94."). According to IRS's substantially narrowed assertion of the privilege, the Court ruled for IRS, finding that the revised *Vaughn* index for TR–45–155–94 quite specifically provided that TR–45–155–94 contained "audit information" protected under attorney-client privilege. *See* Mem. Op. for Summ. J. at 17–18. Now, after this favorable ruling by the Court, IRS evidently is attempting to resurrect the privilege for the two TAs, TR–45–1642–94 and TR–45–2164–93.[35] *See* IRS's Opp. to Pl. Supp. Mot. for Summ. J. at 2 n. 2.

The Court refuses to revisit this issue of the attorney-client privilege. The D.C. circuit court has noted that the interests of judicial economy and finality militate against a court's tolerating a piecemeal approach by a party. *See Holy Spirit Association for Unification of World Christianity v. Central Intelligence Agency*, 636 F.2d 838, 846 (D.C.Cir.1980). The circuit court has accordingly directed that agencies not make new exemption claims to a district court after the judge has ruled in the other party's favor. *See id.* (citing *Grumman Aircraft Engineering Corp. v. Renegotiation Bd.*, 482 F.2d 710, 721–22 (D.C.Cir.1973)). In particular, the D.C.

---

**34.** The Court has ruled already that these two TAs are protected under the deliberative process privilege.

**35.** It is not clear whether IRS is indeed claiming the attorney-client privilege for these two documents. First, IRS fails to discuss the attorney-client privilege at all in its renewed motion for summary judgment. *See* Def. Renew Mot. Second, in its *Vaughn* index for TR–45–1642–94 and TR–45–2164–93, IRS again fails to discuss the attorney-client privilege in any way—it simply states in one line that it is asserting the attorney-client privilege. *See Vaughn* Index (submitted June 6, 2000) Ex. 1 at 21, 28. Finally, as mentioned before, the Court had understood IRS to have foregone its assertion of the privilege to all TAs including TR–45–1642–94 and TR–45–2164–93 in May of 1999. *See* IRS's Opp. to Pl. Supp. Mot. Summ. J. at 2 n.2.

circuit court has warned of "[t]he danger of permitting the Government to raise its FOIA exemption claims one at a time, at different stages of a district court proceeding." *See Ryan v. Department of Justice,* 617 F.2d 781, 792 (D.C.Cir.1980). The Court has already considered the attorney-client privilege as claimed by IRS—IRS claimed the privilege for only TR–45–155–94, and the Court considered the assertion to that one TA and ruled on the matter in its previous opinion. *See* Mem. OP. for Summ. J. at 17–18. If IRS had wanted to claim the attorney-client privilege for TR–45–1642–94 and TR–45–2164–93, the appropriate time to have asserted the privilege for these two documents would have been with TR–45–155–94 prior to the Court's March Order. Having once abandoned the privilege for the two TAs, the interests of judicial economy and finality dictate that IRS may not resurrect the attorney-client privilege for TR–45–1642–94 and TR–45–2164–93.

### III. CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Motion for Reconsideration. In addition, the Court grants in part and denies in part Plaintiff's and Defendant's Renewed Cross–Motions for Summary Judgment as follows: With respect to the TA covered by the treaty exemption (TR–45–1362–93), the Court grants Defendant's renewed motion for summary judgment and denies Plaintiff's. With respect to the TAs prepared for law enforcement purposes, the Court grants in part and denies in part Plaintiff's and Defendants renewed motions. With respect to TAs covered by attorney work product privilege, the Court grants Defendant's renewed motion and denies Plaintiff's. With respect to the TAs covered by the deliberative process privilege, the Court grants in part and denies in part Plaintiff's and Defendant's renewed motions. Finally, with respect to TAs covered by attorney-client privilege, the Court denies Defendant's renewed motion.

An order accompanies this memorandum opinion.

### ORDER

### (Reconsideration of Earlier Opinion and Renewed Cross–Motions for Summary Judgment)

For the reasons stated in the accompanying memorandum opinion, it is, this 26 of March, 2001, hereby

**ORDERED** that Plaintiff's Motion for Reconsideration is DENIED WITH PREJUDICE; it is further

**ORDERED** that Plaintiff's and Defendant's Renewed Cross–Motions for Summary Judgment are DENIED IN PART and GRANTED IN PART, as follows:

● Defendant must release the following TAs: TR–45–0008–95, TR–45–798–93, TR–45–1000–94/Tr–45–1001–94, TR–45–1691–94, TR–45–699–93, TR–45–396–92–A, TR–45–934–94, TR–45–933–94, TR–45–2233–93, TR–45–1383–94, TR–45–1974–93, TR–45–2473–93, and TR–45–2820–92;

● Defendant may withhold in their entirety the following TAs: TR–45–1362–93, TR–45–396–92, TR–45–1465–94, TR–45–472–93, TR–45–531–93, TR–45–304–94, TR–45–1763–93, TR–955–93, TR–45–307–93, TR–45–2164–93, TR–45–1642–94, TR–45–1796–93, TR–31–107–93, TR–31–87–93, TR–31–1954–94, TR–31–230–94, TR–31–2121–92, TR–31–1281–94, TR–31–1237–94, TR–31–1235–94, TR–45–155–94, TR–1011–94, TR–45–2608–93, TR–45–2535–93, TR–31–1434–92, TR–31–2162–92, CC:INTL–0902–93, and CC:INTL–0251–94; and

• Defendant may withhold in part the following TAs: pages 1 and 2 of TR–45–396–93 and TR–45–511–93; it is further

**ORDERED** that the case is dismissed and that this is a final, appealable order.

**SO ORDERED.**

## MEMORANDUM OPINION

### (Motion for Reconsideration)

This case was brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552, as amended, by Plaintiff Tax Analysts ("Plaintiff") seeking disclosure of various documents produced by the Internal Revenue Service's Office of Chief Counsel. Pending before the Court is a Motion for Reconsideration of the Court's Opinion and Order by Defendant Internal Revenue Service ("Defendant" or "IRS"), Plaintiff's Response thereto, which contains its own request for reconsideration,[1] and Defendant's Reply. Upon consideration of the Motions, the Court denies Plaintiff's Cross–Motion for Reconsideration and denies in part and grants in part Defendant's Motion for Reconsideration.

## I. BACKGROUND

When Plaintiff first filed this Freedom of Information Act ("FOIA") suit, it sought full disclosure of six categories of documents produced by the IRS's Office of Chief Counsel: Legal Memoranda ("LMs"), Litigation Guideline Memoranda ("LGMs"), Tax Litigation Bulletins ("TLBs"), Technical Assistances ("TAs"), Field Service Advice Monthly Reports ("FSA Reports"), and Pending Issue Reports ("PIRs"). Later, the case was narrowed by the parties via stipulations and concessions as to certain issues. Congress further narrowed the case by enacting the Internal Revenue Service Reform and Restructuring Act of 1998 ("IRSRRA"), Pub.L. 105–206, 112 Stat. 685, 772 (codified as I.R.C. § 6110 (West Supp.1999)), which deprived the Court of jurisdiction over Plaintiff's claims to the extent that they pertain to TLBs, TAs "to the field," and post–1985 LGMs.

Despite the complex record, on March 31, 2000, this Court found that some of Plaintiff's claims were amenable to summary disposition and granted summary judgment in part ("2000 Order"). The Court granted IRS's motion for summary judgment and denied Plaintiff's motion for summary judgment as to those categories of documents that were unaffected by Congress's enactment of IRSRRA: LMs, PIRs and FSA Reports. Both parties' motions were denied as moot with respect to TLBs, post–1985 LGMs, and TAs to the field, all three of which had been dismissed from the case in the context of the IRS's IRSRRA motion to dismiss. This left two remaining categories of documents: pre–1986 LGMs and TAs other than TAs to the field. As for the pre–1986 LGMs, because the motions for summary judgment were filed at a time when neither party could have anticipated that the Court would be forced to narrow its ruling along these lines, the Court denied without prejudice this portion of the motions for summary judgment with the expectation that the parties would renew their motions in light of the changed landscape of this litigation. As to TAs other than TAs to the field, the portion of the motions pertaining to these TAs was granted in part, denied in part, and remanded to the IRS for an enhanced *Vaughn* index that would enable the Court to fully evaluate the claimed exemptions.

Subsequent to the Court's 2000 ruling, Defendant conceded that as to the pre–

---

1. For convenience, the Court will identify the portion of Plaintiff's Response containing its own request for reconsideration as "Plaintiff's Cross–Motion for Reconsideration."

1986 LGM's, the case was moot because these documents were released to Plaintiff. *See* Def. Praecipe Withdrawing Portion of Def's Renew. Summ. J. Brief. Thus by then, the only remaining category of documents was TAs other than TAs to the field. Complying with the Court's request in the 2000 Order, IRS submitted supplemental *Vaughn* indexes and both parties further briefed the Court on the remaining issue of TAs other than TAs to the field in their respective Renewed Cross–Motions for Summary Judgment. After considering the briefs, on March 26, 2001, the Court granted in part and denied in part Plaintiff's and Defendant's Renewed Cross–Motions for Summary Judgment as follows ("2001 Order"): With respect to the TA covered by the treaty exemption (TR–45–1362–93), the Court granted Defendant's renewed motion for summary judgment and denied Plaintiff's renewed motion. With respect to the TAs prepared for law enforcement purposes, the Court granted in part and denied in part Plaintiff's and Defendant's renewed motions. With respect to TAs covered by the attorney work product privilege, the Court granted Defendant's renewed motion and denied Plaintiff's renewed motion. With respect to the TAs covered by the deliberative process privilege, the Court granted in part and denied in part Plaintiff's and Defendant's renewed motions. Finally, with respect to TAs covered by the attorney-client privilege, the Court denied Defendant's renewed motion. Now before

the Court is Defendant's Motion for Reconsideration of this 2001 Order. In its Response to that Motion, Plaintiff not only challenges Defendant's claims of error, but also asks the Court to reconsider the 2001 Order in Plaintiff's favor.

## II. DISCUSSION

### A. Plaintiff's Cross–Motion for Reconsideration

Before addressing the merits of Defendant's Motion, the Court will first consider Plaintiff's Cross–Motion for Reconsideration. In its response to Defendant's Motion, Plaintiff not only challenges Defendant's Motion, but also asks the Court to reconsider the 2001 Order in Plaintiff's favor. *See* Plaintiff's Response to Def. Mot. for Recons. ("Pl.Resp.") at 2. Mainly, Plaintiff argues that the Court erred in holding that six TAs (TR–45–396–92, TR–45–1465–94, TR–45–472–93, TR–45–531–93, TR–45–304–94, and TR–45–1763–93) were protected in their entirety under the attorney work product privilege.[2] *See* Pl. Resp. at 4–9.

 Aside from the merits of Plaintiff's claim, the Court notes with concern that Plaintiff filed its Cross–Motion for Reconsideration more than ten days after the 2001 Order, when Federal Rules of Civil Procedure Rule 59(e) plainly requires that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed. R. Civ. Pro. 59(e). The Court recognizes

---

**2.** Plaintiff also asserts that the Court erroneously held that these six TAs are protected under Exemption 7(E). *See* Pl. Resp. at 5. Plaintiff argues that because Exemption 7(E) does not protect agency working law, the portions of the TAs containing agency working law must be disclosed. *See id.* However, the Court did not hold in its 2001 Order that these six TAs are protected under Exemption 7(E). The Court clearly stated that because these TAs are protected as attorney work product under FOIA Exemption 5, "there is no need to address whether some portions of these documents would also be protected under Exemption 7(E)." *See* Memorandum Opinion dated March 26, 2001 ("2001 Mem. Op.") at 26. The Court, therefore, had no occasion to analyze nor issue an opinion with respect to whether or not Exemption 7(E) protects agency working law. Accordingly, the Court again declines to express any opinion on this particular issue.

that Defendant's timely Motion gives the Court "the power and jurisdiction to amend the judgment for any reason, if it [chooses] to do so," and further notes that it is "not limited to the ground set forth in [Defendant's M]otion itself." *Varley v. Tampax*, 855 F.2d 696, 699 (10th Cir.1988); *United States v. Hollis*, 424 F.2d 188, 191 (4th Cir.1970). However, the Court has found no case dictating that the Court must consider the opposing party's untimely request for reconsideration in its favor. If Plaintiff was dissatisfied with the Court's Order, it should have filed a motion for reconsideration within the ten-day requirement as Defendant has done. Having failed to do so, Plaintiff should not be able to benefit from Defendant's diligence.

Notwithstanding its procedural shortcomings, Plaintiff's request for reconsideration of the Court's holding—that agency working law is protected by the attorney work product privilege—is also without merit. Plaintiff cites *Schiller v. NLRB*, 964 F.2d 1205 (D.C.Cir.1992), as the controlling case for the proposition that the segregability requirement applies to documents protected under the attorney work product privilege. This Court agrees that it is "[the] rule in this Circuit that *non-exempt* portions of a document must be disclosed." *See id.* at 1209 (emphasis added). Despite Plaintiff's assertion otherwise, however, the Court never held that documents protected by FOIA Exemption

5 attorney work product privilege are not subject to the segregability requirement. The Court simply followed the Supreme Court's express direction that agency working law is exempt under Exemption 5 attorney work product privilege. *See* 2001 Mem. Op. at 29–31 (discussing *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 360 n. 23, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) ("FOMC")).[3] In other words, agency working law contained in a privileged attorney work product is exempt material in and of itself, and therefore, need not be segregated and disclosed.[4] Accordingly, Plaintiff's Cross–Motion for Reconsideration is denied.

### B. Defendant's Motion for Reconsideration

Defendant also asks this Court to reconsider its 2001 Order pursuant to Rule 59(e),[5] asserting as follows that: (1) the threshold requirement set out by the D.C. Circuit in *Rural Housing Alliance v. Dept. of Agriculture*, 498 F.2d 73 (D.C.Cir.1974), no longer applies after the 1986 Congressional amendment to FOIA; (2) the Court erroneously held that Defendant effectively abandoned its assertions of exemptions other than Exemption 7(E) with regard to those TAs for which Defendant submitted a supplemental *Vaughn* index addressing only Exemption 7(E); (3) the Court erroneously held that Defendant has effectively forfeited its claims of attorney-client privi-

---

3. The Court notes that the mistyped date of FOMC in its 2001 Mem. Op. was a clerical error.

4. The D.C. Circuit's holding in *Schiller* is not to the contrary. The D.C. Circuit simply noted that the district court failed to address the segregability issue and remanded the case for the district court to assess what, if any, portion of the documents protected by the attorney work product privilege is non-exempt material. 964 F.2d at 1210. The D.C. Circuit did not hold that agency working law contained in a privileged attorney work product

is non-exempt material that must be disclosed.

5. Defendant's motion cites "Fed.R.Civ.P. 59 and 60." *See* Defendant's Motion for Reconsideration ("Def. Mot. for Recons.") at 1. However, Defendant does not claim any of the numerous bases for bringing a Rule 60 motion, ie. clerical mistake, inadvertence, surprise, excusable neglect, fraud, etc. Therefore, the Court will construe Defendant's Motion as a request pursuant only to Rule 59(e).

lege for all other TAs not included in the representative sample submitted to the Court; and (4) the 2001 Order did not explicitly resolve the exemption claims for documents in dispute, other than those submitted as a representative sample. *See* Def. Mot. for Recons. at 1–2.

### 1. The Court's analysis following *Rural Housing Alliance* is still applicable.

First, Defendant asserts that the Court erroneously applied the two-part analysis of *Rural Housing Alliance* when determining whether any of the TAs could be withheld pursuant to Exemption 7(E). *See* Def. Mot. for Recons. at 1–8. Defendant argues that the threshold requirement under *Rural Housing Alliance* consisted of an inquiry into whether the withheld documents were "investigatory," and that this "investigatory" requirement was later eliminated by Congress in the 1986 amendments to FOIA.[6] *See id.* at 1–4. While the Court agrees that the 1986 amendments removed the term "investigatory records" from the language of Exemption 7, the Court cannot agree that *Rural Housing Alliance* threshold inquiry is no longer applicable.

Notably, in a D.C. Circuit decision issued after the 1986 amendments, the circuit court applied the threshold inquiry articulated in *Rural Housing Alliance. See Birch v. United States Postal Service,* 803 F.2d 1206, 1209–1211 (1986). The D.C. Circuit expressly stated that even after the 1986 amendments, the *Rural Housing Alliance* threshold requirement still applies:

> We have no reason to doubt the continuing validity of *Rural Hous. Alliance.* While FOIA was amended after *Rural Hous. Alliance,* the phrase "law enforcement purpose," which that opinion construed, was left unchanged.

*Id.* at 1210 n. 39. In other words, *Rural Housing Alliance* still supplies the standard to be used when assessing whether a mixed-function agency has met the threshold requirement of Exemption 7—that the withheld documents were compiled for "law enforcement purposes." Further, the *Rural Housing Alliance* standard dictates that in order for a mixed-function agency to cross the "law enforcement purposes" threshold, the withheld documents must have been gathered in the course of "an inquiry as to an identifiable possible violation of law . . . whether the individual were a private citizen or a government employee."[7] *Rural Housing Alliance* 498 F.2d at 82. Contrary to what Defendant contends, *Rural Housing Alliance* does not expound on the pre–1986 inquiry into whether the withheld documents were "investigatory." Rather, it simply defines the "law enforcement purposes" threshold requirement for mixed-function agencies as documents related to specific investiga-

---

6. In its original form, Exemption 7 permitted agencies to withhold "investigatory files compiled for law enforcement purposes." Pub.L. No. 90–23, 81 Stat. 54, 55 (1967) (subsequently amended). With the 1986 amendments which deleted the word "investigatory," Exemption 7 now permits the withholding of "records and information compiled for law enforcement purposes." Pub.L. No. 99–570, § 1802, 100 Stat. 3207, 3207–48.

7. Defendant cites to several decisions asserting that other courts have held IRS documents discussing general techniques not involving specific taxpayers as coming within the bounds of Exemption 7(E). *See* Def. Mot. for Recons. at 7–8 (citing *Small v. IRS,* 820 F.Supp. 163, 165–66 (D.N.J.1992)); *Pully v. IRS,* 939 F.Supp. 429, 437 (E.D.Va., 1996); *Buckner v. IRS,* 25 F.Supp.2d 893, 898–99 (N.D.Ind.1998); *Ferguson v. IRS,* 1990 U.S. Dist. LEXIS 15293 (N.D.Cal., Oct. 31, 1990). However, none of these cases are binding. The controlling case for this Court is the D.C. Circuit decision of *Birch.*

tions.[8] *See id.* at 81. Thus, in assessing the Exemption 7 claims of IRS, clearly a mixed-function agency, the Court correctly applied the more exacting threshold scrutiny articulated in *Rural Housing Alliance.* Accordingly, with respect to Defendant's request that this Court reconsider its analysis of Exemption 7 threshold requirement, Defendant's Motion is denied.

## 2. The Court's rulings on the specific documents will apply respectively to all the documents at issue.

Defendant also asks the Court to direct that Defendant may, in a manner consistent with the rulings of the Court articulated in its 2000 and 2001 Orders (collectively "Orders"), withhold any document or portion thereof as to which it has claimed an exemption not subsequently withdrawn. *See* Def. Mot. for Recons. at 12–13. Defendant points to the Court-approved stipulation signed by the parties on April 10, 1998, identifying certain TAs, falling within thirteen discrete categories, as representative of all the TAs at issue in this case. *See* Final Stipulation Order, dated Feb. 26, 1999 ("Stipulation Order"). Defendant asserts that "[t]he parties intended that since the large volume of TAs could be divided into a relatively small number of discrete categories, it would be most efficient for the Court to rule on these specific TAs, and then the parties, under the Court's direction, would apply the Court's ruling to all of the TAs at issue." Def. Mot. for Recons. at 12. Plaintiff disputes that such was the intent of the parties.[9] *See* Pl. Resp. at 9–11. It is not clear for what purpose the specific TAs were submitted, if not to serve as a representative sample. The Court viewed and continues to view the specific TAs, which were submitted to the Court, as a representative sample. Accordingly, the Court orders that Defendant apply the Court's legal holdings articulated in the 2000 and 2001 Orders to all of the TAs at issue (except where a claimed exemption was subsequently withdrawn for specific TAs),[10] and

8. Defendant contends that after the 1986 amendments, the "Current Exemption 7 Test" protects records generated for general law enforcement purposes that do not necessarily relate to specific investigations. *See* Def. Mot. for Recons. at 5 (citing to *PHE, Inc. v. Dept. of Justice,* 983 F.2d 248 (D.C.Cir.1993)). However, *PHE, Inc.* involved the FBI, a criminal law enforcement agency. "A court may apply a more deferential attitude toward the claims of 'law enforcement purpose' made by a criminal law enforcement agency," and therefore, not subject to the more exacting scrutiny articulated by *Rural Housing Alliance. Pratt v. Webster,* 673 F.2d 408, 418 (D.C.Cir.1982).

9. First, Plaintiff seems to suggest that because the TAs submitted for *in camera* inspection were selected solely by IRS, it cannot trust these specific TAs to be truly representative, and accordingly, never stipulated that these TAs served as a representative sample. *See* Pl. Rep. at 9–10. However, Defendant points out Plaintiff did in fact have a role, however minimal that may have been, in the selection of the TAs. *See* Def. Reply at 7–8. In addition,

the Court assumes that Defendant acted in good faith 'in selecting the specific TAs to be representative of the various categories of the TAs at issue. *See Carter v. Dept. of Commerce,* 830 F.2d 388, 393 (D.C.Cir.1987).

Plaintiff also implies that Defendant cannot be trusted to faithfully apply the Court's legal holdings to the TA's remaining at issue. *See* Pl. Resp. at 10–11. However, the Court assumes that Defendant will comply with the Court's order in good faith. *See Carter,* 830 F.2d at 393.

10. For example, Defendant abandoned its claim of attorney-client privilege for all but one TA included in the sample of documents submitted to the Court *in camera.* Thus, Defendant may not reclaim the attorney-client privilege for these specific TAs which were originally submitted for *in camera* review. However, as Defendant requests, *see* Def. Mot. for Recons. at 11–12, it may apply the Court's holding with respect to its assertion of the attorney-client privilege to all other TAs at issue in this case (including the sixteen TAs later included in the supplemental *Vaughn* index addressing only Exemption 7(E)).

withhold and disclose them in a manner consistent with the Court's holdings.[11] Finally, in complying with this Court's holdings, Defendant is further ordered to provide Plaintiff with a list of all the TAs it continues to withhold, specifying for each the basis or bases for withholding, and demonstrating its application of the Court's legal holdings in its Orders.

## III. CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Cross–Motion for Reconsideration and denies in part and grants in part Defendant's Motion for Reconsideration.

An order accompanies this memorandum opinion.

## ORDER

### (Motion for Reconsideration)

For the reasons stated in the accompanying memorandum opinion, it is, this 21 of May, 2001, hereby

**ORDERED** that Plaintiff's Cross–Motion for Reconsideration [# 132] is DENIED WITH PREJUDICE; it is further

**ORDERED** that Defendant's Motion for Reconsideration [# 131] is DENIED IN PART and GRANTED IN PART, as follows:

- With respect to Defendant's request that this Court reconsider its analysis of

Exemption 7 threshold requirement, Defendant's Motion is denied;

- Defendant shall apply the Court's legal holdings articulated in the 2000 and 2001 Orders to all the TAs at issue and withhold and disclose them in a manner consistent with the Court's holdings;

- Defendant shall provide Plaintiff with a list of all the TAs it continues to withhold, specifying for each the basis or bases for withholding, and demonstrating its application of the Court's legal holdings in its Orders.

**SO ORDERED.**

---

**11.** Defendant also asks the Court to clarify that it may apply the Court's holdings regarding Exemption 5 (deliberative process, attorney work product, and attorney-client privileges) and Exemption 3 (in conjunction with 26 U.S.C. § 6103(a)) to the sixteen TAs for which Defendant submitted a supplemental *Vaughn* index addressing only Exemption 7(E). *See* Def. Mot. for Recons. 8–11.

When the Court addressed the Exemption 7(E) claims in its 2001 Order, it also resolved claims of Exemption 5 with regard to several documents. Therefore, the Court feels that, at the very least, Defendant should have included the legal justifications for Exemption 5

claims when submitting these sixteen TAs, instead of only addressing Exemption 7(E). Now that Defendant seeks to apply the Court's rulings with respect to the other Exemptions to these sixteen TAs (as it is ordered to do here with all the other TAs that were not included in the representative sample), the Court's ruling as to these sixteen TAs have been rendered "ineffective," in so far as other Exemptions may still apply. Thus, despite the Court's displeasure with the manner in which Defendant has complicated the record, in light of this Court's order here, Defendant may apply the Court's rulings with respect to the other Exemptions to these sixteen TAs.